## OLIMBIO GENTILE, petitioner.

Suffolk.    April 9, 1959. — June 2, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Mentally Ill Person.   Evidence,* Judicial notice, Regulation.

Upon reversing an order dismissing a petition seeking discharge of the
   petitioner from confinement in an institution as an insane person, this
   court took judicial notice of a regulation of the department of mental
   health in order to ascertain material matters which might be brought
   to the attention of the court on further proceedings in the case.  [320–
   321]

Where it appeared in a proceeding for discharge of the petitioner from
   confinement as an insane person in the Bridgewater State Hospital, to
   which he had been transferred by an order of the department of mental
   health following his lawful commitment to Boston State Hospital, that
   in the circumstances, although the trial judge had found the petitioner
   to be still mentally ill, the public interest required a reconsideration of
   his situation by the department in the light of changed statutes, an
   order dismissing the proceeding was reversed to facilitate such re-
   consideration.  [322]

PETITION, filed in the Supreme Judicial Court for the
county of Suffolk on June 9, 1955.

The case was heard by *Whittemore,* J.

*Paul V. Power,* for the petitioner.

*John Warren McGarry,* Assistant Attorney General, for
the Commonwealth.

WILKINS, C.J.    This petition for a writ of habeas corpus
by one committed as an insane person has been treated by
the single justice also as an application for discharge under
G. L. c. 123, § 91 (as amended through St. 1950, c. 684,
§ 9[1]).   The petitioner is held at Bridgewater State Hospital
under an order of commitment to Boston State Hospital

---

[1] Section 91.   "Any person may make written application to a justice of
the supreme judicial court at any time and in any county, stating that he
believes or has reason to believe that a person named in such application is
confined as an insane person in an institution . . . and ought not longer to
be so confined . . . and requesting his discharge."

entered on July 31, 1952, in the Probate Court for Suffolk County under G. L. c. 123, § 51 (as amended through St. 1950, c. 684, § 6[1]), and under an order of transfer by the department of mental health dated March 3, 1954. G. L. (Ter. Ed.) c. 123, § 20.[2] The order of transfer was made for security reasons because of attempts to escape. The single justice, after hearing, found that the petitioner is suffering from a psychosis, and is mentally ill within the statutory definition, G. L. c. 123, § 1 (as amended through St. 1955, c. 637, § 1); ruled that the petitioner was not entitled to a discharge; and dismissed the petition. The petitioner appealed and alleged exceptions.

At the time of the commitment in 1952 there was no requirement of notice to the alleged insane person. The record is silent as to whether in fact there was such notice. In the view that we take of the case we need not reconsider *Dowdell, petitioner*, 169 Mass. 387. See *O'Leary, petitioner*, 325 Mass. 179, 183. Statutes presently effective provide for such notice. See G. L. c. 123, § 51 (as amended through St. 1955, c. 637, § 8, and St. 1956, c. 589, § 2). For present purposes we regard the petitioner as lawfully committed.

At the time of his transfer to Bridgewater State Hospital in 1954 there likewise was no express provision for notice. There is such a provision at the present time. G. L. c. 123, § 20 (as amended through St. 1955, c. 637, § 5). We cannot be required to take judicial notice of regulations. *Finlay* v. *Eastern Racing Assn. Inc.* 308 Mass. 20, 27. *Mastrullo* v.

[1] Section 51. "No person shall be committed to any institution for the insane designated under or described in section ten . . . unless there has been filed with the judge a certificate . . . of the insanity of such person by two properly qualified physicians, nor without an order therefor, signed by a judge . . . stating that he finds that the person committed is insane and is a proper subject for treatment in a hospital for the insane . . . . The order of commitment shall also authorize the custody of the insane person either at the institution to which he shall first be committed or at some other institution to which he may be transferred . . . ." See now St. 1955, c. 637, § 8; St. 1956, c. 589, § 2.

[2] Section 20. "The department . . . may transfer to and from any institution any inmate thereof who, in its opinion, is a proper subject for admission to the institution to which he is to be transferred; but no such inmate shall be transferred to be detained as an insane person unless he has been duly committed as insane by a judge or court. . . ." See now St. 1955, c. 637, § 5.

*Ryan*, 328 Mass. 621, 622. *Gilbert* v. *Merrimac Dev. Corp.* 333 Mass. 758, 759. But since there must be further proceedings, we have, in order to ascertain what might be brought to the attention of the court at that time, examined Regulation No. 1 of the department of mental health contained in the Handbook of the Department of Mental Health (1955) pp. 138–145. We there learn that the department has not designated Bridgewater State Hospital under G. L. c. 123, § 10 (as amended through St. 1955, c. 637, § 2[1]). By G. L. c. 123, § 22A (as amended through St. 1941, c. 194, § 7), "The department [of mental health] shall . . . have the same supervision over the commitment of insane persons to the Bridgewater state hospital as it has over the commitment of insane persons to other state hospitals under the provisions of this chapter; it shall have the same authority to discharge or transfer inmates of said Bridgewater state hospital who are not under sentence, or whose sentences have expired, as it has to discharge or transfer inmates of other state hospitals. . . . But the said Bridgewater state hospital shall remain under the jurisdiction of the department of correction and the control of the superintendent of the state farm. . . ." See G. L. c. 125, § 18 (as amended through St. 1955, c. 770, § 11); § 19 (as amended through St. 1955, c. 770, § 11, and St. 1956, c. 715, § 16). See for the analogous provision in 1954 G. L. (Ter. Ed.) c. 125, § 48, now repealed. There is grave doubt whether, even if the department had designated Bridgewater State Hospital under c. 123, § 10, the petitioner could be transferred to a correctional institution without notice. See *Commonwealth* v. *Page*, *ante*, 313.

Because of the availability of the simple procedure of c. 123, § 91, we do not pause to consider whether a petitioner whose petition for a writ of habeas corpus has been dismissed in the trial court may bring his case here on exceptions. See

---

[1] Section 10. "The department shall divide the commonwealth into districts . . . and shall designate the state hospitals to which mentally ill, epileptic and feeble minded persons . . . shall be committed. . . ." See now St. 1955, c. 637, § 2.

*Wyeth* v. *Richardson,* 10 Gray, 240; *King's Case,* 161 Mass. 46, 50–51; *Bishop, petitioner,* 172 Mass. 35, 36; *Chambers's Case,* 221 Mass. 178, 179; *Harris, petitioner,* 309 Mass. 180, 184; *Baker, petitioner,* 310 Mass. 724, 727.

In order to reach a prompt and just result, the public interest requires that the petitioner's situation be considered anew by the department acting pursuant to statutes now in effect. The dismissal of the present petition would not be to any extent a bar to such further proceedings. Nevertheless in order to leave a clear field we shall reverse the order dismissing the petition.

*So ordered.*