JOHN W. NASON *vs.* COMMISSIONER OF MENTAL HEALTH.

Suffolk.     May 4, 1966. — June 8, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Mandamus.   Public Officer.   Mentally Ill Person.*

Mandamus did not lie to compel the Commissioner of Mental Health to make available to the petitioner, who had been committed to the Bridgewater State Hospital under G. L. c. 123, § 100, proper care and treatment, "including a psychiatric staff and [necessary] medical and therapeutic facilities," alleged to be lacking at Bridgewater, or to transfer

the petitioner to another State hospital having a staff and facilities adequate to furnish him such care and treatment and, if necessary, to provide maximum security facilities there, where the petition did not allege that the Commissioner was refusing to carry out the duties of his office at Bridgewater or was not doing so there with competence and good judgment in view of the funds available and the staff obtainable.

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on June 1, 1965.

Upon transfer to the Superior Court, the case was heard by *Moynihan,* J., on demurrer.

*William P. Homans, Jr.,* for the petitioner.

*Willie J. Davis,* Special Assistant Attorney General (*Richard E. Bachman,* Assistant Attorney General, with him), for the respondent.

WHITTEMORE, J. In this mandamus proceeding the petitioner, Nason, has appealed from an order in the Superior Court sustaining the demurrer of the Commissioner of Mental Health. The petition avers that Nason was indicted for murder on September 12, 1962, and was committed to Bridgewater State Hospital (Bridgewater) under G. L. c. 123, § 100.[1] Pursuant to subsequent Superior Court orders Nason was transferred to Medfield State Hospital and later was again confined at Bridgewater. The petition asked for a writ ordering the Commissioner to make available to Nason proper care and treatment at Bridgewater "including a psychiatric staff and [necessary] medical and therapeutic facilities" or, if the Commissioner is unable to do so, to make proper care and treatment available to Nason by transferring him to another State hospital having a psychiatric staff and medical and therapeutic facilities adequate to furnish Nason proper care and treatment and, if necessary, to provide at such other hospital maximum security facilities.

---

[1] "If a person under complaint or indictment for any crime . . . is . . . found by the court to be mentally ill or in such mental condition that his commitment to a state hospital is necessary for his proper care or observation pending a determination as to any mental illness, the court may commit him to a state hospital or to the Bridgewater state hospital under such limitations, subject to the provisions of section one hundred and five, as it may order."

The general allegations of the petition that Bridgewater is unable to furnish its patients the treatment required for them[2] are supported by the inclusion in the petition of the testimony of several physicians taken in the course of proceedings in 1963 brought by Nason in respect of his transfer.[3]

Assuming as we must for purposes of the demurrer that the conditions at Bridgewater are as described in the petition, it cannot be said that the Commissioner is refusing to carry out the duties of his office. What Nason asks is that we order the Commissioner to increase the staff and the facilities at Bridgewater and to make them comparable to the staff and facilities at other State hospitals. Even if the means exist, whether, when, and how to do this involve the exercise of the Commissioner's judgment and discretion. "It is not the function of a writ of mandamus to require public officers to make a particular decision on a matter within their discretion, . . . and we have no right to substitute our judgment for that of the official upon whom

---

[2] "That Bridgewater . . . is so understaffed in proportion to its inmate population as not to be able to furnish its patients, including the petitioner, the treatment required so that they may have the opportunity to recover from the various mental illnesses from which they suffer; that Bridgewater . . . does not have the same medical and therapeutic facilities with which all other state hospitals under the jurisdiction of the Department of Mental Health are equipped; that the staff-patient ratio at Bridgewater . . . falls markedly below the standard of all other state hospitals under the jurisdiction of the Department of Mental Health, and that the petitioner, while expressly disclaiming any intention to reflect upon the conscientiousness of the members of the medical and related staffs at . . . Bridgewater . . . is unable to receive any treatment for the illness from which he suffers."

[3] This testimony showed that in 1963 Bridgewater was "markedly understaffed." It did not then have the six physicians allocated as its "quota in the budget," but in addition to the director of clinical psychiatry had only two other physicians, neither of whom was able to give psychotherapy. The director's time was largely taken with court appearances, administrative work, and three staff meetings a week. Most of the State's mental hospitals were undermanned; even with a staff of six Bridgewater would have been at a marginal level. At that time Bridgewater did not give treatment unless "it's an emergency." An effort was made to give treatment as much as possible. Nason was not receiving treatment. Medication had been prescribed and he had refused it. Nason would in the opinion of the physicians benefit from electric shock treatment or insulin therapy which was not provided. At the close of a hearing on December 13, 1963, the judge in the Superior Court said, "On Dr. Allen's testimony, Bridgewater isn't fit for anybody." The assistant district attorney representing the Commonwealth said, "I agree with you, Your Honor. It's a deplorable condition. I believe it should be remedied."

the Legislature has imposed the duty of making a decision." *Leigh* v. *Commissioner of Pub. Health & Charities of Lawrence,* 310 Mass. 343, 344. "Here the petition does not seek to compel performance . . . of any particular specified official act or acts . . . . Rather it seeks to have this court institute a general investigation of . . . past official conduct . . . to order . . . generally in the future . . . [full performance of] duties . . . . It is not the function of any court to exercise [such] inquisitorial powers . . . over . . . [administrators]. That is the function of another branch of the government." *Nichols* v. *Dacey,* 329 Mass. 598, 600–601.

For all that is alleged, the Commissioner was doing in 1963 and is now doing, with competence and good judgment, all that is possible within the funds available and the staff that can be obtained to work at Bridgewater. Even were the inference justified that, having only limited funds and staff, the Commissioner had decided to do more for persons confined in other hospitals (and hence not separately classifiable for the security confinement available at Bridgewater), we could not in these proceedings substitute our judgment for his on that issue.

This case is not like a failure to provide a "house of correction," rather than a jail, for confinement of "lunatics and mad persons" as shown in *Commonwealth* v. *Justices of the Court of Sessions for the County of Hampden,* 2 Pick. 414, 417. Nor is it like *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 27, where it appeared that action of the county commissioners was in violation of the trusts upon which Walden Pond was held and the command of the writ was "to refrain from further violation . . . and to take action, in orderly course, within the limits of appropriations available from time to time, by replanting, landscaping, and erosion prevention work to reduce the damage already caused . . . ."

Whether Nason should be transferred by administrative decision and whether security should be increased in parts of other hospitals are likewise for the judgment of the Commissioner.

It would not be ground for an order in mandamus that Nason, or other inmates may, as he argues, be suffering unconstitutional discrimination. There are proceedings, other than mandamus, available to anyone confined, to test the legality and constitutionality of the confinement. See G. L. c. 248; *Dowdell, petitioner,* 169 Mass. 387; *Gentile, petitioner,* 339 Mass. 319; *Golden, petitioner,* 341 Mass. 672; *Maki* v. *Superintendent of Mass. Correctional Inst. Bridgewater,* 349 Mass. 519. In such proceedings the constitutionality of great differences in treatment might require judicial determination.

The alleged inadequacies of care at Bridgewater, assuming they now exist, give ground for most serious concern[4] but not for relief in mandamus. We need not decide whether the writ would lie on a showing that, notwithstanding adequate funds and staff, there had been a long continued absence of any of the accepted equipment and procedures for treating the mentally ill. This is not such a case.

*Order sustaining demurrer affirmed.*

---

[4] The respondent's brief recognizes that the petitioner "upon being committed to Bridgewater State Hospital, is entitled to care, observation and treatment" and that "[t]his is implicit in G. L. c. 123, § 100 and § 105."