ROBERT ROHRER, petitioner.

Suffolk.   October 3, 1967. — November 10, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Mentally Ill Person.   Notice.   Statute,* Construction.

G. L. c. 123, § 105, as amended through St. 1961, c. 101, § 2, impliedly
requires that a person be given notice of a proposal for his commit-
ment to an institution for the insane for an indefinite period and an
opportunity to be heard in advance of commitment; and a prisoner
against whom a criminal complaint was dismissed and who was com-
mitted under § 105 to the Bridgewater State Hospital for an indefinite
period without notice and hearing was entitled to a discharge from
custody under such commitment.

PETITION for a writ of habeas corpus filed in the Supreme
Judicial Court for the county of Suffolk on May 3, 1967.

The case was reserved and reported by *Cutter,* J.

The case was submitted on briefs.

*Ronald J. Chisholm* for the petitioner.

*Elliot L. Richardson,* Attorney General, & *Willie J. Davis,*
Assistant Attorney General, for the respondent.

CUTTER, J.   Rohrer, by his petition filed in the County
Court for a writ of habeas corpus, directed to the superin-
tendent of the Massachusetts Correctional Institution,
Bridgewater, alleged that he was illegally confined there.
Upon agreed facts the single justice reserved and reported
the case without decision.   The commitment was in fact
made to the Bridgewater State Hospital (Bridgewater).[1]

After a period of work at a carnival in Brockton, Rohrer,
then using another name, started for Boston by bicycle to
seek employment.   He was arrested in Stoughton for va-
grancy (G. L. c. 272, § 66) on July 4, 1963.   At the police
station he became belligerent in violent protest at his
arrest.

---

[1] By G. L. c. 125, § 18 (as inserted by St. 1955, c. 770, § 11), the Bridgewater
State Hospital is a "part of the Massachusetts Correctional Institution,
Bridgewater," and by G. L. c. 123, § 22A (as amended through St. 1963,
c. 596), is under the control of the superintendent of the correctional insti-
tution.   See G. L. c. 125, § 1 (as amended through St. 1956, c. 731, § 5).   The
original commitment paper has been examined and the agreed facts have been
corrected by stipulation.

On the following morning, he was brought before the
District Court of Southern Norfolk in a straitjacket. He
entered a plea of not guilty and was committed to Bridge-
water pursuant to G. L. c. 123, § 100,[2] for thirty-five days
of observation.

On July 30, 1963, the director of clinical psychiatry at
Bridgewater informed the District Court by letter that
Rohrer was insane. He recommended an indefinite com-
mitment. Upon the findings of Bridgewater physicians,
Rohrer on August 5, 1963, was committed to Bridgewater
pursuant to G. L. c. 123, § 105.[3] The vagrancy complaint
was dismissed. Rohrer himself was not in court.

Rohrer was not represented by counsel before the Dis-

---

[2] Section 100, as amended through St. 1956, c. 589, § 7, reads: "If a per-
son under complaint . . . for any crime . . . is at the time appointed for
trial . . . or at any time prior thereto found by the court to be mentally ill
or in such mental condition that his commitment to a state hospital is neces-
sary for his proper care or observation pending a determination as to any
mental illness, the court may commit him to a state hospital or to the Bridge-
water state hospital under such limitations, subject to the provisions of . . .
[§ 105], as it may order. The court may in its discretion employ one or more
experts in mental illness, or other [qualified] physicians . . . to examine the
person . . . . A copy of the complaint . . . and of the medical certificates
. . . shall be delivered with such person . . . in accordance with . . .
[§ 53]. If reconveyed to jail or custody under . . . [§ 105], he shall be held
in accordance with the terms of the process by which he was originally com-
mitted or confined."

[3] Section 105 (as amended through St. 1961, c. 101, § 2) reads: "When,
in the opinion of the superintendent of the state hospital to which a prisoner
has been committed . . . under . . . [§ 100], or of the commissioner and
the medical director . . . in case of commitment . . . to the Bridgewater
state hospital, the mental condition of the prisoner is such that he should be
returned to custody . . . he or they shall so certify upon the warrant or
commitment, and notice, accompanied by a written statement regarding the
mental condition of the prisoner, shall be given to the proper custodian . . .
who shall thereupon cause the prisoner to be reconveyed to such custodian
. . . provided, that a prisoner committed or removed to a state hospital un-
der . . . [§ 100] for his proper care or observation pending the determination
of his insanity shall, unless found to be insane as hereinafter provided, be re-
turned . . . to the . . . custody whence so taken, not later than thirty-five
days thereafter, but such prisoner shall in all other respects be subject to the
provisions of this section. . . . [Here follow provisions not relevant relating
to insane prisoners who need not be kept in the hospital.] If a prisoner, com-
mitted or removed under . . . [§ 100] for his proper care or observation as
aforesaid, is found . . . to be insane, the finding shall be certified upon the
warrant or commitment, and the superintendent . . . or the commissioner
and said medical director, as the case may be, shall report the prisoner's
mental condition to the court . . . issuing the warrant or commitment . . .
with the recommendation that the prisoner be committed as an insane person.
The court . . . may thereupon commit the prisoner to an institution for the
insane, if, in the opinion of the court . . . such commitment is necessary.
The provisions of this section relative to the return to custody . . . of a

trict Court. At all times he was indigent and unable to retain counsel. In the County Court and in this court, he has had counsel.

This proceeding raises for determination the validity of Rohrer's commitment to Bridgewater for an indefinite period on August 5, 1963, without giving to him any notice of the hearing, any opportunity to be present, or any information concerning the possibility of appointing counsel for him (or perhaps a guardian ad litem, see *Chase* v. *Chase*, 216 Mass. 394, 397, under the inherent power of a court to appoint such a guardian in the exercise of its proper jurisdiction), and without appointing counsel. Rohrer asserts that the commitment was in violation of his constitutional rights and denied him due process, because when committed he had not been convicted of any crime.

Sections 100 and 105, unlike G. L. c. 123, § 51 (as amended through St. 1959, c. 215, § 6, see *Gentile, petitioner*, 339 Mass. 319, 320), do not require in express terms notice to the person committed and a hearing before his commitment. In *Dowdell, petitioner*, 169 Mass. 387, 388–389, it was said that the possibility of judicial release (pursuant to broad provisions much like those now found in G. L. c. 123, §§ 91[4]–

---

prisoner taken therefrom under . . . [§ 100] shall apply, so far as apt, to a prisoner committed under this section.

If a prisoner under complaint . . . is committed in accordance with . . . [§ 100], and such complaint . . . is dismissed or nolprossed . . . the superintendent of the institution . . . or said medical director and the commissioner . . . may permit such prisoner temporarily to leave such institution . . . [§§ 88, 90] or may discharge such prisoner . . . [§ 89]. Said superintendent or said medical director, and, in case of commitment to the Bridgewater state hospital, the commissioner, as the case may be, shall, in case of the release or discharge of any such prisoner under complaint . . . for arson, immediately prior to the date of such release or discharge, notify the state fire marshal of the intended date of the release or discharge of such prisoner. The word 'prisoner' as used in this section shall include all persons committed under . . . [§ 100], whether or not in custody when so committed . . . .." Section 105 has since been amended by St. 1965, c. 80, in respects which do not affect the views herein expressed with respect to the necessity of notice to the person to be committed and a hearing.

[4] Section 91 (as amended through St. 1959, c. 215, § 9) reads, in part, "Any person may make written application to a justice of the supreme judicial court at any time . . . stating that he . . . has reason to believe that a person named in such application is confined as an insane person in an institution or other place . . . and ought not longer to be so confined, giving the names of all persons supposed to be interested in keeping him in confinement, and requesting his discharge."

93; see *Wright, petitioner*, 350 Mass. 123, 124) saved provisions for commitment without notice and a hearing from constitutional invalidity. See *Le Donne, petitioner*, 173 Mass. 550, 551–552. In *O'Leary, petitioner*, 325 Mass. 179, 180, 182–183, the provisions for the commitment of defective delinquents found in G. L. c. 123, § 113 (as amended through St. 1947, c. 684, § 1), were interpreted as "impliedly calling for notice in accordance with the elements inherent in due process." This court, in the *O'Leary* case, declined to extend to § 113 the principle laid down in the *Dowdell* and *Le Donne* cases. Reluctance to apply those two decisions unnecessarily is also apparent in *Gentile, petitioner*, 339 Mass. 319, 320.

The two cases, and similar decisions in other States, have been adversely criticised in some later decisions elsewhere. See *Barry* v. *Hall*, 98 F. 2d 222, 228 (Ct. App. D. C.); *State ex rel. Fuller* v. *Mullinax*, 364 Mo. 858, 865–866. See also Kadish, Institutionalizing the Mentally Ill, 9 Western Pol. Q. 93, 109–115. Cf. *Matter of Coates*, 9 N. Y. 2d 242, 254; app. dism. 368 U. S. 34; note, 75 Harv. L. Rev. 847; Assn. of the Bar of the City of N. Y., Mental Illness and Due Process, pp. 220–244. In addition to the possibility that due process will be denied by an indefinite commitment under § 105, without notice and hearing, of a person against whom no criminal charges remain pending, there may also be a denial of equal protection of the laws if such a commitment is held to be permissible when other persons (see c. 123, § 51, as amended) not then charged with crime can be committed only after notice and hearing. See *Baxstrom* v. *Herold*, 383 U. S. 107, 114–115. Doubts thus exist concerning the constitutionality of a statute like § 105 if construed as authorizing an indefinite commitment, without notice or hearing, of a person no longer charged with crime. These doubts (see *Opinion of the Justices*, 341 Mass. 760, 785) lead us to construe § 105, with respect to indefinite commitments (as opposed to temporary commitments for observation and diagnosis or to commitments in emergency situations), now impliedly to require notice to the person whose

commitment is proposed and an opportunity to be heard in advance of commitment.[5] Although reliance may have been placed (see Rep. A. G., Pub. Doc. No. 12, May 31, 1956, p. 92) upon the *Dowdell* and *Le Donne* cases in making this and other similar indefinite commitments, the two cases no longer provide sufficient assurance of the constitutional validity of indefinite commitments like that now under consideration.

We have no occasion now to consider the validity of the original temporary commitment. See, however, *Bumpus* v. *French*, 179 Mass. 131, 133–134; *Gardiner* v. *Jardine*, 245 Mass. 274, 277–278; Lindman & McIntyre (Am. Bar Foundation), The Mentally Disabled and the Law, pp. 37–40; Kadish, Institutionalizing the Mentally Ill, 9 Western Pol. Q. 93, 113–114. We recognize that the validity (even where there has been no notice or hearing) of such a temporary commitment or an emergency commitment to assist in the administration of justice may rest upon considerations different from those affecting an indefinite commitment and that the opportunity for prompt application for discharge from such a commitment under G. L. c. 123, § 91, may be the most practicable method of affording judicial review of temporary or emergency commitments.

Rohrer is entitled to be discharged from custody upon his indefinite commitment under § 105 on August 5, 1963, without notice and hearing. The record before us does not

---

[5] Where, because of the condition of the person committed, notice and hearing would not be effective or feasible, the requirements of due process may be satisfied by the appointment of counsel or of a guardian or a guardian ad litem, to act for the committed person. See e.g. *Simon* v. *Craft*, 182 U. S. 427, 436–437. In some instances of serious mental illness, emergency, or lack of knowledge of friends or relatives, prompt notice of the right to a later judicial hearing, given after the commitment to the person to be committed and to any discoverable near relative, has been suggested as appropriate. See Assn. of the Bar of the City of N. Y., Mental Illness and Due Process, p. 24 et seq; Mental Hygiene Law, § 72 (vol. 34A McKinney's Consol. Laws of N. Y. Ann.). Support for our view that § 105 impliedly requires notice and hearing in the circumstances now under consideration may be found in the final sentence of c. 123, § 51, inserted by St. 1956, c. 589, § 2, which provides that in any commitment under §§ 99–105, "where the person is before the court in connection with a criminal matter, the court may commit the person . . . in accordance with . . . [such] sections and this section, but no additional hearing . . . [under § 51] need be held in addition to the hearings provided in" §§ 99–105.

disclose, however, whether Rohrer's present mental condition will now permit his discharge without undue risk to himself or to the public. Accordingly, his discharge will be delayed for at least sixty days from the date of rescript to permit the initiation and disposition (a) of proceedings by him for his release either under G. L. c. 123, § 91, as amended (see fn. 4), or under St. 1967, c. 620, § 1, which makes comprehensive provision concerning the disposition of persons who may be illegally confined at Bridgewater, or (b) if he appears to be not a fit person to be released, of proceedings by or in behalf of the Department of Mental Health under c. 123, § 51, as amended through St. 1959, c. 215, § 6, for his indefinite commitment after due notice and hearing. If such proceedings are conducted, the terms of Rohrer's discharge, or of any other disposition made concerning him, may be fixed in accordance with the determination in such proceedings.

The case is remanded to the County Court for further proceedings consistent with this opinion.

*So ordered.*