Susan **BEAUMONT, Plaintiff, Appellant,**

v.

Alexander C. **MORGAN, Defendant, Appellee.**

Susan **BEAUMONT, Plaintiff, Appellant,**

v.

Christian W. **AUSSENHEIMER et al., Defendants, Appellees.**

**Nos. 7516, 7517.**

United States Court of Appeals, First Circuit.

June 8, 1970.

Daniel Klubock, with whom Daniel F. Featherstone, Jr., Boston, Mass., was on brief, for appellant.

Lionel H. Perlo, and Donald J. Wood, Asst. Atty. Gen., with whom Daniel A. Lynch, Robert H. Quinn, Atty. Gen., and Ficksman & Conley, Boston, Mass., were on briefs, for appellee.

Before ALDRICH, Chief Judge, COFFIN, Circuit Judge, and FORD, District Judge.

COFFIN, Circuit Judge.

Plaintiff Susan Beaumont brought suit under 42 U.S.C. § 1983 seeking recovery for loss of liberty against six doctors, all of whom played a role in her two-week confinement in a Massachusetts mental hospital. The jury exonerated defendant Morgan, the doctor who had originally recommended hospitalization, but returned verdicts against

the five doctors who had dealt with plaintiff while confined. The district court, however, set these five verdicts aside and entered judgments, notwithstanding the verdicts, for defendants. This appeal followed.

Testimony at trial indicated that plaintiff, a 46-year-old unmarried woman, entered a Cambridge tavern on July 3, 1967, drank three Manhattans, then fainted on the sidewalk outside. Plaintiff claimed to have no memory of the ensuing events until she woke up strapped to an examining table at Cambridge City Hospital. Policemen summoned to her aid, however, testified that she was abusive, struck them repeatedly with her purse and cane, and threatened suicide. The policemen reported this behavior to the interne on duty at City Hospital, defendant Morgan. On the basis of their reports, his own observations of plaintiff's violent behavior, and plaintiff's renewed threats of self-destruction, Morgan concluded that plaintiff suffered from "acute psychosis with alcoholism" and needed further observation. After confirming his diagnosis with a senior doctor, Morgan executed a request for plaintiff's temporary admission to Westborough State Hospital under Mass. Gen.Laws c. 123 § 79, a provision authorizing emergency hospitalization for ten days.

On her arrival at Westborough State, plaintiff was examined by defendant Grimberg, who observed that she was under the influence of alcohol and very belligerent, and tentatively concluded that "her psychosis is probably due to excess alcohol in a paranoid personality". No doctor examined plaintiff on the following day, July 4, but on July 5 plaintiff was examined by defendant Segal, a staff psychiatrist, and by a meeting of the staff chaired by the hospital's director of psychiatry, defendant Simon. The consensus was that plaintiff suffered from "pathological intoxication in a sociopathic personality", and that circumstances warranted a "significant period of observation" beyond the ten days confinement authorized by § 79.

Further confinement required a certificate of mental illness and a court order pursuant to Mass.Gen.Laws c. 123 § 77. Accordingly, on the following day, July 6, the hospital summoned defendants Paine and Aussenheimer who examined plaintiff and certified to the Westborough District Court that continued confinement was necessary for plaintiff's treatment. The local court, without holding a hearing, issued an order authorizing plaintiff's commitment for forty days' observation. On July 14, defendant Simon noted that plaintiff was ready for discharge. Plaintiff was discharged after staff review of her case on July 19.

The court below, viewing this evidence most favorably to the plaintiff, concluded that defendants had erred in their diagnosis of mental derangement, but had acted in good faith and in conformity with statutory procedures. Were § 1983 actions to succeed under such circumstances, the court reasoned, the federal courts would be inundated with challenges to state confinements, both psychiatric and penal. The court added that, even if a § 1983 claim existed, some of the defendants would escape liability because they did not cause plaintiff's confinement, while others would enjoy absolute immunity as witnesses in a judicial proceeding.

Attacking these rulings and the jury verdict for defendant Morgan, plaintiff raises no fewer than fifteen separate questions. We find it necessary to answer three: whether the court erred in ruling that defendant Morgan was qualified under Mass.Gen.Laws c. 123 § 79 to request temporary care in a state institution; whether defendants properly preserved their rights to request judgments notwithstanding the verdict under Rule 50, Fed.R.Civ.P.; and whether the evidence, viewed most favorably to plaintiff, was sufficient to support the jury verdicts.

We begin with plaintiff's attack on defendant Morgan's authority to request temporary care. Section 79 requires that the physician who makes the request

be a graduate of a legally chartered medical school and be registered in accordance with Mass.Gen.Laws c. 112. Defendant had registered in accordance with chapter 112, but only under c. 112 § 9, which grants a limited authority to practice within a specific hospital, rather than under the general registration provision, c. 112 § 2, which permits practice anywhere in the Commonwealth. Plaintiff maintains that § 79's reference to chapter 112 means c. 112 § 2 but not c. 112 § 9.

■ Plaintiff's interpretation ignores the plain language of the statute. Had the legislature meant to permit only physicians qualified under § 2 to request care, it could undoubtedly have said so rather than leaving this significant limitation to judicial inference. Moreover, plaintiff's interpretation would render superfluous § 79's requirement that the requesting physician be a medical school graduate; all physicians registered under § 2 must be graduates, but a limited registration under § 9 may be obtained after only three and a half years of medical school study. Defendant Morgan, though having only a limited registration, was a medical school graduate. Finally, we note that registration under § 9, while confining the physician to a specific hospital, places no restrictions on his authority to practice medicine within the hospital walls. *Cf.* Barrette v. Hight, 353 Mass. 268, 273, 230 N.E. 2d 808 (1967). We hesitate to create legal restrictions without clear statutory mandate, especially since such restrictions would seriously limit the usefulness of the many internes and residents registered under § 9.[1]

■ Plaintiff also argues that defendants have lost their right to judgments notwithstanding the verdict by failing to renew their motions for directed verdict at the close of all the evidence as required by Rule 50, Fed.R. Civ.P. The record indicates that all six of the defendants filed motions for directed verdicts at the close of plaintiff's evidence. The court announced that it would reserve its rulings and ordered trial to proceed. Thereafter only defendant Morgan—whose motion for a directed verdict was rendered moot by his favorable verdict—offered evidence. This evidence, consisting of the brief testimony of the three police officers who took plaintiff to Cambridge City Hospital, was relevant to Morgan's case but bore only tangentially on the liability of the remaining defendants. Later that same day, the court informed plaintiff's counsel that he would have an opportunity to rebut defendants' arguments "when I deal with the motions". After the jury retired, the court set a time for the filing of briefs on the motions for directed verdicts. Memoranda were duly filed. While technical noncompliance with Rule 50 always invites trouble, *compare* Gillentine v. McKeand, 426 F.2d 717, 1st Cir. 1970), circumstances we have related bring this case squarely within our holding in Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968, 972 (1st Cir. 1969): "[A] case combining * * * judicial assurance concerning preservation of rights at the time of motion and * * * brief and inconsequential evidence following the motion * * * is a proper case for the liberal construction commended by Fed.R.Civ.P. 1 in the interests of justice."

■ This brings us to the central issue on appeal: whether the evidence was sufficient to support the jury verdicts against the five defendants who treated plaintiff while confined. Under 42 U.S.C. § 1983, plaintiff had the burden of showing both that these defendants acted under color of state law and that they deprived her of federally pro-

---

1. Plaintiff relies on Mass.Gen.Laws c. 176B § 1, which defines "registered physician" in terms of c. 112 § 2. Chapter 176B, however, deals with regulation of medical service corporations such as Blue Cross. Moreover, we note that where the legislature wished to use the term "registered physician" in a restrictive sense, it was careful to make its meaning clear.

tected rights, here the right to due process guaranteed by the 14th Amendment. Stringer v. Dilger, 313 F.2d 536, 540 (10th Cir. 1963); *see* Cohen v. Norris, 300 F.2d 24, 30 (9th Cir. 1962).[2] No question is raised on appeal concerning whether defendants acted under color of state law. To carry the second part of her burden, plaintiff argues that defendants denied her due process by ignoring lawful procedures and by performing their statutory duties in a perfunctory manner. Neither theory will bear close inspection.

▉ Plaintiff's allegations concerning abuse of lawful procedure are based in part on a misunderstanding of what Mass.Gen.Laws c. 123 §§ 77 and 79 require. We have already ruled that defendant Morgan was an appropriate person to make the initial request for hospitalization under § 79. Section 79 imposes an additional duty on the superintendent of the receiving hospital, here defendant Sharp, either to release the patient within ten days or to initiate legal proceedings for a longer commitment. Defendants chose the latter course after examining plaintiff at a meeting of the staff on the first full working day following her admission. Plaintiff argues that the § 79 determination should have been made by defendant Grimberg when she first arrived at Westborough State. This interpretation, however, would defeat the evident purpose of § 79 to insure that the choice between commitment and release is based on careful observation rather than the snap judgment of a single physician.

Plaintiff also complains of various omissions in her hospital records, but these omissions strike us as minor oversights rather than denials of constitutional rights. For example, both the

hospital's application for judicial commitment under § 77 and the physician's certificate of mental illness are attacked, as if they were indictments, for lack of the date when plaintiff was taken to the hospital, but the record shows no prejudice from these omissions. Of more moment, perhaps, is the failure to include the names of two persons designated by plaintiff on the application for judicial commitment. Thus the notice required by Mass.Gen.Laws c. 123 § 54 was never sent. It is not, however, clear whether the failure to obtain this information was due to hospital oversight or plaintiff's admitted unwillingness to cooperate. Equally important, plaintiff testified that she was divorced, temporarily unemployed, alone in Boston, without any family and that a long-time friend she had written while in the hospital did not respond. Thus, whether the failure to comply with § 54 was the fault of plaintiff or the hospital, no possible prejudice has been shown.

Plaintiff finds additional evidence of abuse of legal procedures in the failure of the Westborough District Court to hold a hearing on her commitment as allegedly required by § 77. Section 77 makes no mention of a hearing on the need for temporary confinement; plaintiff casually suggests that we should read this requirement into the statute to avoid constitutional infirmity. Whatever the merits of plaintiff's argument, *but cf.* Petition of Rohrer, 353 Mass. 282, 286, 230 N.E.2d 915 (1967) the fault for failure to convene a hearing would rest with the local court, not with defendants. Plaintiff also protests the lag between July 14, when defendant Segal informed the superintendent that plaintiff "was to be brought up for discharge", and July 19, when, after staff review of

2. The district court submitted our case to the jury on a false imprisonment theory, which placed the burden of showing confinement on plaintiff and the burden of showing justification on defendants. Restatement 2d, Torts §§ 35, 120(c). However, § 1983 does not create a federal cause of action for all confinements, but only those confinements which deny federally protected rights. An essential element of plaintiff's case is proof that defendants deprived her of such rights by abusing lawful procedures. Thus plaintiff, not defendants, has the burden on the issue of justification.

plaintiff's case she was released. However we resist the invitation to elevate the bureaucratic delays inherent in any sizeable institution into violations of constitutional rights. Thus we find no evidence from which a jury might have concluded that defendants abused legal procedures in confining plaintiff.

Apart from these allegations of procedural irregularities, plaintiff has charged that the several defendants made perfunctory and erroneous determinations of her need for confinement. To substantiate this point, plaintiff has testified at length concerning the apparent callousness of defendants and the cursory nature of their examinations. We understand how one who is suddenly deprived of his liberty and subjected to the multiple indignities of a large mental hospital might feel wronged by the doctors responsible. But an essential element of plaintiff's case is proof that defendants erred in thinking that plaintiff's mental condition warranted confinement in accordance with Mass. Gen.Laws c. 123 §§ 77 and 79. After examining the record, we have concluded —contrary to the district court—that the evidence was insufficient to permit a jury finding that defendants were mistaken.

The record does reveal that a battery of experts thought plaintiff needed immediate hospitalization in early July. The jury has found on adequate evidence that Dr. Morgan's initial request for treatment under § 79 was justified by plaintiff's "mental derangement" requiring "immediate care and treatment" on July 3.[3] Defendant Grimberg concurred in this initial judgment. Subsequently, on July 5 and 6, the remaining defendants examined plaintiff. They concluded, on the basis of plaintiff's black-out on the evening of July 3, her repeated threats of suicide and their own examinations that she was "in such mental condition that [her] temporary commitment to a mental institution [was] necessary for [her] proper care and observation" as required by § 77.

To rebut this unanimous medical opinion, plaintiff offers only the fact that she was discharged as free of psychosis on July 19 and her own opinion that her behavior was attributable to physical causes rather than mental illness. But the fact that plaintiff was without psychosis on July 19 is not inconsistent with defendants' conclusion that her mental condition warranted confinement on July 6. As for plaintiff's own testimony that her behavior was attributable to physical rather than mental causes, we note the total lack of expert corroboration. While this is not a malpractice case, we think the principle enunciated in Riggs v. Christie, 342 Mass. 402, 407, 173 N.E.2d 610, 613–614 (1961) is apposite:

"In the usual case where matters of professional judgment are involved, a tribunal of fact, whether court or jury, unassisted by expert testimony or evidence from the profession concerned, should not retrospectively substitute its judgment for that of the person whose judgment had been sought and given."

Were we to hold otherwise, any person could make out a prima facie case of illegal commitment by setting up his own opinion of his mental health against the professional judgments of, as here, a half dozen physicians.

Plaintiff further argues that "the jury could have found * * * that defendants failed to make reasonable independent determinations, and thereby did not meet the requirements of the statutes which they relied on for justification." For the jury so to find would require it not only to disbelieve the testimony of the defendants, but, as we have elsewhere said, to "use such disbelief alone

---

3. The district court instructed the jury that, "[T]he real heart of the matter is * * * are you satisfied that Miss Beaumont could be found to have been in need of immediate care and treatment because of mental derangement other than drunkenness?" Thus the jury verdict for defendant Morgan is tantamount to a finding that plaintiff's mental condition on July 3 satisfied § 79.

to support a finding that the opposite was the fact." Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed. 2d 120. This may not be done either by the court or by a jury. Federal Insurance Co. v. Summers, 403 F.2d 971, 974 (1st Cir. 1968).

Thus we can find no sufficient basis for concluding either that defendants abused legal procedures or that they erred in their diagnosis. A fortiori, there is no evidence of the kind of tortious disregard of plaintiff's rights which might justify liability under 42 U.S.C. § 1983.

Affirmed.