Pamela Joy THOMPSON, et
al., Appellants,

v.

ST. MARY'S HOSPITAL OF DULUTH,
MINNESOTA, et al., Respondents,

St. Louis County, Respondent,

Dr. Robert J. Campaigne, Respondent.
No. 51947.

Supreme Court of Minnesota.

June 12, 1981.

David L. Ramp, Duluth, for Legal Aid Service of Northeastern Minnesota.

Johnson, Fredin, Killen, Thibodeau & Seiler, Duluth, for St. Mary's Hospital of Duluth.

Alan Mitchell, County Atty., Duluth, for St. Louis County.

Halverson, Watters, Bye, Downs & Maki, Duluth, for Dr. Campaigne.

PETERSON, Justice.

Plaintiffs Pamela and Donald Thompson brought this action in St. Louis County District Court against defendants St. Mary's Hospital of Duluth, St. Louis County, and Dr. Robert J. Campaigne, alleging that plaintiff Pamela Thompson was held involuntarily at St. Mary's Hospital in violation of Minn.Stat. § 253A.04 (1980) and 42 U.S.C. §§ 1983 and 1985 (Supp. III 1979). Plaintiffs, who are represented by Legal Aid Service of Northeastern Minnesota (Legal Aid), moved for payment of expert witness fees and deposition costs pursuant to Minn.Stat. § 563.01 (1980), which authorizes in forma pauperis (IFP) proceedings, or, in the alternative, permission to take tape-recorded depositions. The trial court denied plaintiffs' motions, and plaintiffs brought this appeal. We reverse and remand with directions.

On Monday, March 10, 1980, plaintiff Donald Thompson called an ambulance and requested that his wife, whom he believed to be intoxicated and in need of assistance, be taken to defendant St. Mary's Hospital. Defendant Dr. Robert J. Campaigne, the admitting physician, diagnosed Mrs. Thompson as possibly suffering from alcoholic intoxication. On Tuesday, March 11, Mrs. Thompson and her husband requested several times that she be released. Later that day, she signed a form explaining the rights of a patient under emergency hospitalization. The form stated that she had a right to be discharged in 72 hours. Dr. Dennis Kottke, a psychiatrist, visited Mrs. Thompson and allegedly told her that there was no reason why she should continue to be hospitalized. She was not released at that time, however, because Dr. Campaigne had left instructions with the nursing staff indicating that Mrs. Thompson should not be permitted to leave.

On March 12, Dr. Campaigne telephoned the nursing staff at approximately 4 p.m. and informed them that he would be in to sign a 72-hour emergency hold order. Mrs. Thompson's attorney called the hospital to request her release. At 6:40 p.m. that day, she was discharged.

Plaintiffs brought this action contending that Dr. Campaigne had violated section 253A.04 [1] because he had never filed a written statement which would permit him to hold Mrs. Thompson against her will. They also claimed that defendants, acting under color of Minnesota law, deprived Mrs. Thompson of her constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. It was their opinion that they should be awarded the following damages: (1) $50,000 for physical and emotional harm to Mrs.

1. Minn.Stat. § 253A.04, subd. 1 (1980), provides:

Any person may be admitted or held for emergency care and treatment in a hospital with the consent of the head of the hospital upon a written statement by any licensed physician that he has examined the person not more than 15 days prior to the person's admission, that he is of the opinion, for stated reasons, that the person is mentally ill, inebriate or mentally deficient and is in imminent danger of causing injury to himself or others if not immediately restrained, and that an order of the court cannot be obtained in time to prevent such anticipated injury. Such physician's statement shall be sufficient authority for a peace or health officer to transport a patient to a hospital.

Thompson; (2) $50,000 for wrongful imprisonment to Mrs. Thompson; and (3) $20,000 to Mr. Thompson for loss of consortium.

Plaintiffs, through their attorney, David Ramp of Legal Aid, obtained an ex parte order allowing them to proceed IFP. They then sought an order under section 563.01 to: (1) compel the county to pay plaintiffs $2,000 to enable them to retain an expert psychiatrist to assist in preparation of their case; (2) compel the county to pay for transcripts of depositions that plaintiffs desired to take; and, (3) in the alternative, to allow plaintiffs to record depositions by tape recording.

The court denied plaintiffs' motions and noted that it was surprised that a fee-generating case was being handled by Legal Aid. It also stated that Legal Aid should assume its own costs and that reimbursement should come from a judgment of money damages since this was the procedure used by law firms. The court, in addition, decided that since the county already contributes to Legal Aid, it should not be asked to subsidize Legal Aid further by assuming payment of legal expenses. Plaintiffs contend that all of these grounds are erroneous and that the county should pay for the costs under section 563.01.

■ 1. Plaintiffs first assert that they should not be denied relief merely because fees may be generated from this case. It is clear that section 563.01 does not state an exception for fee-generating cases, and, further, the legislative history of the statute indicates that any reference to fee-generating cases was specifically deleted by the legislature. Thus, the fact that this case may generate fees cannot be a basis for denying payment of legal expenses under the IFP statute.

Next, plaintiffs claim that the trial court erred by indicating that Legal Aid should handle this case as "every other law firm" would, by advancing the costs and receiving reimbursement from the judgment. They contend that the implication that a law firm, and therefore Legal Aid, cannot obtain payment of expenses under the IFP statute when it represents a client on a contingent fee basis is incorrect.

The United States Supreme Court held in *Adkins v. E. I. Dupont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), that IFP is available to a party who is represented on a contingent-fee basis. In *Adkins*, the petitioner was represented by a firm of private lawyers on a contingent-fee basis. The trial court decided that this arrangement prevented the petitioner from claiming IFP status unless the attorneys prepaid her costs. The Supreme Court reversed, concluding that the purpose of the IFP statute could be frustrated by construing the statute as imposing a guarantee of appeal costs on all lawyers employed to represent the poor on a contingent-fee basis. The court noted that the assets of counsel should not be considered in deciding IFP status. We conclude, under the rationale of *Adkins*, that clients of Legal Aid, as well as those of a private law firm, may seek IFP status despite the fact that they are being represented on a contingent-fee basis.

It is also plaintiffs' position that the trial court erred in concluding that, since the county contributes to Legal Aid, legal aid clients cannot take advantage of the IFP statute. We believe that plaintiffs' contention is correct. The court cannot take account of an attorney's resources or the availability of government funding for a legal aid organization. *Dillard v. Liberty Loan Corporation*, 626 F.2d 363 (4th Cir. 1980). Consequently, the fact that St. Louis County contributes to Legal Aid does not prevent plaintiffs from seeking payment under section 563.01.

2. The county asserts that plaintiffs' motion was properly denied since plaintiffs did not attempt to make a record satisfying the statutory preconditions for payment orders. Under the IFP statute, a court may direct payment of expert witness fees and deposition costs only if they are necessary to the case. The county contends that plaintiffs have not shown that the costs are necessary and that they have only made unsupported generalizations that the requested discovery procedures are advantageous.

Section 563.01, subdivision 5, provides:

If the court finds that a witness, including an expert witness, has evidence material and necessary to the case and is within the state of Minnesota, the court shall direct payment of the reasonable expenses incurred in subpoenaing the witness, if necessary, and in paying the fees and costs of the witness.

Plaintiffs contend that they should receive payment for witness fees pursuant to this provision because it will be necessary for a psychiatrist to testify as an expert witness on their behalf. They note that it will be difficult to make out a prima facie case without the aid of the expert testimony of a physician. *See Beaumont v. Morgan,* 427 F.2d 667 (1st Cir. 1970).

Plaintiffs also claim that they are entitled to have deposition costs paid by the county pursuant to section 563.01, subdivision 6, which provides:

If the court finds that a deposition and transcript thereof are necessary to adequately prepare, present or decide an issue presented by the action, the court shall direct payment of the reasonable expenses incurred in taking the deposition and in obtaining the transcript thereof.

Plaintiffs seek to depose two examining physicians, two nurses, a social worker and a county maintenance employee. They assert that these depositions are necessary to adequately prepare the issue of involuntary hospitalization for trial. In addition, they argue, in the alternative, that if they are not able to obtain payment of deposition costs, they should be allowed to take tape-recorded or videotape depositions in order to minimize their expenses.

It is the county's contention that plaintiffs did not satisfy the preconditions for payment of expert witness fees because they did not show the court: (1) who the expert was; (2) what his qualifications were; (3) the evidence that he had; and (4) what the expert witness expenses are. It claims that plaintiffs have not shown why they requested a payment in the amount of $2,000 for future expert witness fees.

The county further argues that plaintiffs have not shown that it was necessary to depose the named witnesses. It asserts that since all of the witnesses except one are parties or their employees, interrogatories are the more proper, and less expensive, discovery tool. Also, it notes that since plaintiffs have not shown that depositions are necessary, it is inappropriate to use electronic tape recording, because alternative means of recording should be used only when the need is sufficiently great to override the inherent risk of unreliability of tape recordings. It is the county's position, however, that if plaintiffs can demonstrate that depositions are, in fact, necessary, plaintiffs can utilize conventional court recording.

 The trial court has broad discretion in determining whether expenses should be paid under the IFP statute. *See Flowers v. Tribune Support Division,* 507 F.2d 1242 (5th Cir. 1975). In this case, however, the court made no specific findings regarding whether the requested discovery procedures were necessary for plaintiffs to prepare and present their case. Accordingly, we remand this matter to the trial court for consideration of whether an expert witness and depositions of the named individuals are, in fact, necessary for purposes of section 563.01.

If the court directs payment of expert witness fees, it should decide what expenses are reasonable costs in order that plaintiffs may hire an appropriate expert. The court should also review plaintiffs' interrogatories and the answers thereto for the purpose of deciding which witnesses, if any, should be deposed. A determination may then be made regarding the method by which the depositions shall be taken. If it is concluded that tape-recorded depositions may be used, appropriate safeguards should be imposed to ensure the accuracy of the recordation. Minn.R.Civ.P. 30.02(4).

Reversed and remanded.