**Mike ALVEREZ et al., Appellees,**

**v.**

**John W. TURNER, Warden, Utah State Prison, Appellant.**

**Nos. 571 to 585–69.**

United States Court of Appeals, Tenth Circuit.

Feb. 20, 1970.

Lauren N. Beasley, Chief Asst. Atty. Gen., for appellant.

Gerald H. Kinghorn and Phil L. Hansen, Salt Lake City, Utah, for appellees.

Before PICKETT, Senior Circuit Judge, and LEWIS and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

These cases are separate appeals taken by the appellant Turner as Warden of the Utah State Prison from orders of the United States District Court for the District of Utah, Central Division, effectuating the discharge of the appellees from the custody of appellant and returning each appellee to parolee status. Because similar factual and legal questions underlie the appeals, the cases were consolidated for argument, their procedural history with some exceptions to be noted can be generalized, and our views expressed herein are applicable to each case except where specific reference is made to a designated case.

Each appellee has been convicted of a felony in the state courts of Utah; each appellee was subsequently paroled with the parole of each later revoked; each appellee was then returned to the custody of appellant. Apparently triggered by this court's decision in Earnest v. Willingham, 406 F.2d 681, appellees, together with numerous other inmates in the Utah State Prison, filed petitions for federal habeas corpus relief under 28 U.S.C. § 2254 alleging constitutional infirmities in the state parole revocation proceedings that had led to each petitioner's return to custody. The trial court initiated evidentiary hearings and found, preliminarily, that many of the petitioners had been subjected to parole revocation without having been given the opportunity to appear with appointed counsel, although indigent and without waiver of that asserted right.[1] The

---

1. Utah procedures permitted retained counsel to appear at revocation hearings. Board of Pardons of the State of Utah, Rules and Regulations, ch. I, § 17, as amended (1967); *see* Utah Code Ann. § 77–62–7 (1953). The Board has since amended its "Rules and Regulations" to provide for appointment of counsel at petitioner's request. Rules and Regulations, *supra,* as amended (July, 1969).

trial court then directed and allowed subsequent rehearings before the Utah State Board of Pardons. Workman v. Turner, District Court No. C–230–68, (Feb. 19, 1969). The Board obtained counsel for twelve of the appellees, reheard their cases during May, 1969, and again revoked their paroles.[2] The appellee Hurst had only one hearing, held in April, 1967, at which he was represented by counsel. The appellee Ray Jenkins declined to be reheard without the presence of jailhouse counsel. The appellate record does not reflect that appellee Ornelas was ever accorded a second hearing.

■ On August 11, 1969, the trial court resumed its evidentiary hearing to determine if the Board had corrected the errors asserted to exist in prior revocation proceedings. On the basis of its supplemental inquiry, the district court found, severally, that each revocation was unconstitutional because petitioner "was denied his constitutional rights to have witnesses under oath and evidence presented, be confronted by his accusers, cross-examine, and have compulsory process." In granting the writs, the court ordered the discharge of all appellees, and it is this order appellant warden contests on appeal.[3]

The appellate record presented to us is so lacking in specificity that it defies review of individual cases as to any particularized legal or factual premise for the trial court's release of individual appellees. We have before us transcripts of only the second hearings accorded twelve of the appellees before the Board of Pardons and the transcript of the judicial evidentiary hearing. The latter, although consisting of over 200 pages, contains little of evidentiary substance except the continuing admission of the appellant that the appellees who were granted rehearings before the Board were not accorded compulsory process nor other traditional instruments of due process applicable to original trials of persons accused of crime. The remainder of the evidentiary transcript is largely a reflection of extended dissertations by court and counsel of subjective views concerning social justice and conditions at the Utah Prison. Despite record difficulties we are asked to decide, first, whether parole revocation hearings command the rights to witnesses, evidence, confrontation, cross-examination, and compulsory process; and secondly, irrespective of our disposition on the former issue, whether the rehearings measured up to the procedural needs of the occasion.

■ In Earnest v. Willingham, *supra*, we held that the federal board's practice of allowing legal representation at hearing if the releasee in question bore that expense infringed the releasee's right to equal protection and that, therefore, the opportunity to appear with appointed as well as retained counsel must be made available to every releasee facing a question of disputed fact. Our opinion in *Earnest* both explored and updated the judicial posture to conditional release programs, see 406 F.2d at 682, and by way of summary it would only be useful to emphasize that scruti-

---

2. 69 prisoners had applied for the writs and were subjects of the lower court's orders in Workman v. Turner, *supra*. Thereafter, 43 of these petitioners were administratively paroled. Because they were then serving other sentences than the ones under which they had been paroled, 11 of the 69 prisoners were not subjects of the court's release order in August, 1969. Thus, of the original applicants, the 15 appellees are those parolees whose releases are here considered.

3. No exhaustion defect is presented by the instant appeals. See 28 U.S.C. § 2254(b). One of the 69 applicants below petitioned the Utah Supreme Court for a writ of habeas corpus on the ground that he was denied due process by the Board's failure to afford him representation of counsel at his parole revocation hearing. Relief was denied in Beal v. Turner, 22 Utah 2d 418, 454 P.2d 624 (May 1, 1969). Although the 15 orders appealed herein were initially applied for in the federal district court below, *Beal* would have foreclosed relief from the state court.

ny of parole revocation hearings has been in practice thus far restricted to a determination of fair play in their conduct. "[E]arly release (be it mandatory release, parole or probation) and revocation hearings are matters of legislative grace not constitutionally mandated." *Id.*, citing Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). We have repeatedly stated, most recently in Esquivel v. United States, 10 Cir., 414 F.2d 607, 608:

> Although a parole revocation hearing need not conform to the dictates of due process * * * procedural "needs of the occasion" must be met to circumscribe the Board's discretion. However, whether a parole is revoked for a violation of its terms rests in the sound discretion of the Board of Parole. Brown v. Taylor, 10 Cir., 287 F.2d 334, *cert. denied,* 366 U.S. 970, 81 S.Ct. 1933, 6 L.Ed.2d 1259.

■ In the cases at bar any compulsion of *Earnest* was met for each appellee was afforded counsel at rehearing. In asking us to extend the limited equal protection aspect of *Earnest* to the broad scope of constitutional due process applicable to trials appellees simply misconceive the nature and procedural requisites of parole revocation hearings. Although a conditional liberty is at stake, the decision to revoke parole is prognostic, for the integrated object of the Board (and every board administering conditional release programs) is "[t]o determine the optimum release date for each inmate after giving full consideration to the nature of the offense, the degree of risk, the release plans, the extent of his rehabilitation, and his potential for living within the norms of society." Rules and Regulations, *supra,* "Objective of the Board," as amended (1967; July, 1969). As a part of this process, then, a hearing on revocation is directed to reassessing those variables in light of the charged violations of a parolee's agreement of parole. *Id.*, ch. I, § 6(6), ch. III, § 5; *see* Utah Code Ann. §§ 77–62–15, –16 (1953).

In 1967, the President's Commission suggested questions characteristic of any penological decision, and their application to the proceedings at issue is self-evident:

(1) The extent or degree of threat to the public posed by the individual. Significant clues will be provided by the nature of the present offense, and the length of any prior record;

(2) The extent or degree of an individual's commitment to criminal or delinquent values, and the nature of his response to any earlier correctional program;

(3) The kind of personal stability and responsibility evidenced in his employment record, residential patterns, and family support history;

(4) The kind of personal deficiencies apparent, including educational and vocational training needs;

(5) The personal, psychological characteristics of the offender that determine how he perceives the world and his relationship to it. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 179–80 (1967).

In its Report, the Commission recommended that pardon and parole proceedings be refined in part by channeling more expert and differentiated information into the decision-making process; procedural safeguards associated with due process were not viewed as the means to best implement conditional release programs, presumably due to the type of decision they demand. *Id.* at 181.

Correspondingly, the Utah State Legislature has mandated that the Board have before it full information from the state Adult Probation and Parole Section and the several penal institutions concerning the internment record of a prisoner, a record on his conduct in the community from which he was committed, and "a complete report on the pris-

oner's social, psychological, and psychiatric condition and history." Utah Code Ann. § 77–62–8(a) (1953). The warden of the institution in which the prisoner has been confined must detail a report "of the prisoner's institutional record of behavior, discipline, type and manner of work performed, his own efforts to improve his mental and moral condition, and his attitude toward society." A profile of "the physical, mental, and psychiatric condition of the prisoner during the entire period of confinement" must accompany the warden's report. Finally, the law enforcement officials responsible for the legal proceedings leading to a prisoner's commitment must submit a report, and the Adult Probation and Parole Section is required to present the Board a summary of its pre-sentence and pre-parole investigations. Utah Code Ann. §§ 77–62–8(b) (1953). When an indeterminate sentence is imposed, the committing judge must certify to the Board a similar background report. Utah Code Ann. § 77–62–8(c) (1953).

■ Although this informational pool is usually prepared before a prisoner is first paroled, it remains in the Board's files and obviously provides source material from which to reassess a parolee's overall situation in revocation proceedings. Thus, the Board's necessary familiarity with the prisoner's case history removes a hearing on revocation from the courtroom ambit and is the precise reason why traditional rules of evidence, including discovery, have no place in these proceedings. *See* Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 239–240, cert. denied, sub nom. Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316.

Any extension of legal representation, when allowed by the Board, to those not able to retain counsel does not imply that a right to counsel functioning in a trial-type setting has been established. Appellees have conceded as much, but urge that a species of due process is appropriate to revocation proceedings. Appellees argue in fact that only a hearing with rights to counsel, witnesses, evidence, confrontation, cross-examination, and compulsory process can implement their constitutional rights to due process. As in *Earnest,* we decline to clothe these hearings with the rights urged, for the decision to revoke cannot emanate but in part from factors capable of legal proof. And if, as we have held, the decision to revoke is discretionary, the degree to which the personal factors listed above dictate a positive disposition is not susceptible to legal analysis. Stricturing the channels of information, which are required by statute, would impede the Board from making what in the end is always an assessment of the whole person.

Appellees also argue broadly that their position on due process safeguards is supported by the Supreme Court's decisions in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (due process requires indigent be afforded counsel at revocation of probation, or deferred sentencing), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (due process affords juvenile formerly on probation now facing commitment through adjudicatory process enumerated fifth and sixth amendment rights). In *Earnest* we again disclaimed that the rule or rationale of *Mempa* is applicable to parole revocation proceedings, which are not part of a sentencing process, 406 F.2d at 682–683, a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257. Furthermore, appellees erroneously maintain that the Utah Supreme Court has equated the status of a parolee with that of a probationer, when the state court restricted its dictum on point to the right to a hearing, *see* Baine v. Beckstead, 10 Utah 2d 4, 347 P.2d 554, 558, which is statutorily granted parolees retaken on the Board's authority. Utah Code Ann. § 77–62–16 (1953). The *Gault* argument is likewise inapposite, as that case also involved a precommitment decision. The two administrative law cases raised by

appellees [4] do not deal with the unique contract arrangement between the Board and a parolee, *see* Utah Code Ann. § 77–62–15 (1953); the informal type of data garnered for these proceedings, discussed above; or the discretionary determination to revoke based both on fact finding and adjudication of a parolee's adjustment to conditional release.

■ Appellees' authority thus fails to substantiate that a trial's adjudicatory process can be meaningfully equated with the type of fact finding involved in parole revocations; and we reaffirm our holding in Gonzales v. Patterson, 370 F. 2d 94, that the due process clause of the fourteenth amendment does not generate rights to confrontation, nor to cross-examination or compulsory process. Earnest v. Willingham, *supra*, 406 F.2d at 684; Williams v. Dunbar, 9 Cir., 377 F. 2d 505, cert. denied, 389 U.S. 866, 88 S. Ct. 131, 19 L.Ed.2d 137. We also hold that due process does not comprehend the dual rights to witnesses under oath and evidence in conditional release hearings.

Appellees have, however, persuasively argued that their rights to equal protection under the fourteenth amendment were violated by the Board's practice of allowing witness testimony in revocation hearings on the basis of a prisoner's ability to produce voluntary witnesses in his behalf. Although the Board has not promulgated a rule allowing witness testimony in revocation hearings, the transcripts below revealed that the Board does discretionarily permit proffered witnesses to appear on a prisoner's behalf. In sum, the *Earnest* rationale is invoked to compel the right to voluntary witnesses on equal protection grounds.

■ We stated in *Earnest* that "the Board is required to provide substantially the same type hearing for one violator as another." 406 F.2d at 684. But unlike the provision for counsel at issue in *Earnest* and unlike the state board's express provision for retained counsel under its rules, here there is no statutory or rule framework permitting the presence of witnesses at the non-public revocation hearings.[5] Additionally, we emphasized in *Earnest* that the releasee had preserved the denial of the right he alleged by objecting to lack of appointed counsel throughout the proceedings against him. 406 F.2d at 683 n. 2. It become facile, then, to extend *Earnest's* equal protection to the practice of allowing voluntary witness testimony when not one appellee claimed before the Board on rehearing or court below that he sought witnesses in his behalf, and the argument was pressed only in the abstract. We do note, however, that the constitutional right to equal protection can be violated by continued practices as well as by rule.

Our decision not to require the enumerated constitutional safeguards at state parole revocation hearings in no manner forecloses judicial examination of the transcripts to gauge if the pro-

4. Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (sixth amendment safeguards not applicable to Civil Rights Commission's fact-finding inquiries); Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (rights to confrontation and cross-examination applicable to Industrial Employment Review Board hearing depriving petitioner of his civilian employment). *Hannah* demarcated areas of fact finding and adjudication, the latter appropriate for rights associated with criminal trials. The Court in *Greene* dealt with an adjudication problem. Revocation proceedings are an admixture of both inquiries, which accounts for courts' reluctance to allow them either the laxity of legislative investigations or to fashion on these hearings the rigors of a trial.

5. The Utah Board has provided for the availability of retained counsel "at *any* meeting of the Board on hearings for commutation, termination, pardon, remission of fine or forfeiture, parole, or *parole violation.*" · Rules and Regulations, *supra*, ch. I, § 17, as amended (1967) (emphasis added). In contrast, the two sections providing for witness testimony omit revocation hearings from the series of meetings listed. *Id.*, ch. I, § 12, ch. III, § 2.

ceedings were "perfunctory formalities." In the instant case, much of appellees' briefs and oral arguments was addressed to the proposition that the second hearings mirrored the first and were irrefutably tainted by the former proceedings. Since the orders entered by the court below recite no findings of fact or conclusions of law from which to review these claimed errors, Woods Construction Co. v. Pool Construction Co., 10 Cir., 314 F.2d 405, 406–407, they must be viewed as potential.

 In holding that appellees were not entitled to the specifics of due process available to an accused in the first instance, we in no way negate the right of appellees to enjoy due process as that mandate reflects the right of all persons to inherent fairness in all compulsive processes. The right of a prisoner to be heard at a revocation hearing is inviolative; so, too, is the right to know and be specifically informed of the charges and the nature of the evidence against him; and, finally, the right to be free from pure caprice on the part of the discretionary authority before whom the proceedings occur. From our review of the transcripts of the second Board hearings we are satisfied that appellees were not denied these rights. Each appellee in the hearings was personally present and with counsel; each was informed of the charges made. Appellees Jolley, McDorman, Melany, and Wood each admitted commission of parole violations. Appellees Barela, Chavez, Covert, Tavenner, Worthen and Oliver Jenkins adopted a nolo contendere attitude and against each the state introduced testimony of parole officers, statements from unavailable parole officers, and, in some cases, police reports adopted as records of the State Adult Probation and Parole Section. Alvarez denied violations but was specifically inculpated by third-party statements. Sosa was overwhelmed by third-party statements of violative actions while on parole. In conclusion we hold that the action taken by the Board against these appellees was well within its discretion. The appellee Hurst, though not heard a second time, appeared with counsel at his first hearing and admitted two violations, and Ray Jenkins, who had stood conviction of a misdemeanor while on parole, refused appointed counsel. We conclude, generally, that the appellees were denied no federally guaranteed constitutional right and that the second proceedings before the Board of Pardons were adequate to negative a claim to perfunctory revocation amounting to arbitrary administrative action. The cases involving appellees Ornelas and Melany, Nos. 581 and 580, require additional comment.

As we have earlier indicated, the record does not reflect that appellee Ornelas was ever reheard by the Board of Pardons and we have no record of any appellee's first hearing. Thus, this case defies appellate review on the merits. Accordingly, the judgment below is vacated, appellee is remanded to the custody of the warden pending further proceedings, and the case is remanded to the trial court for such further proceedings as may be proper and in accord with the views herein expressed. The mandate shall issue forthwith.

 In No. 580, the appellee Melany alleged in his original petition, in addition to the claims generally applicable to the other appellees, that he had been denied the assistance of counsel at the *judicial* proceedings that had resulted in the revocation of his *probation*. The appellee testified in support of this allegation and the Attorney General was not prepared to meet this claim on behalf of appellant.[6] The trial court, in addition to the general claims held applicable to others, granted relief to Melany on the additional round that he had been denied counsel in the probation revocation hear-

---

6. Although it is perhaps understandable why this particularized issue was lost in the procedural confusion that resulted from the consolidation of 69 petitions and the Attorney General inferred that he thought the fact was otherwise, still we must take the record as we find it.

ing. Such denial is a clear abuse of a federal constitutional right. Mempa v. Rhay, *supra*, given retroactive effect in McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2. The judgment in No. 580 is thus affirmed.

The remaining judgments are severally reversed and the appellees remanded to the custody of the warden in whose charge they were then released. These mandates shall issue forthwith.

The Clerk of the District Court is ordered to forthwith issue all necessary process, including the issuance of bench warrants, to effectuate the provisions of these mandates and the mandate in No. 581–69 and the U. S. Marshal is ordered to serve all such process forthwith and without delay.

The provisions and orders of these mandates shall be in no way interpreted as limiting the warden or any other authorized officer of the State of Utah from using state authority to effectuate the return of these appellees to the custody of the warden.