429 F.2d 844
 Anthony Gregory MARTINEZ, Robert Robertson, and Jack L. Wilkerson, Appellants,
v.
Wayne K. PATTERSON, Warden, Colorado State Penitentiary, and Edward W. Grout, Executive Director, Colorado State Parole Board, Appellees.
 No. 644-69.
 No. 652-69.
 No. 654-69.
 United States Court of Appeals, Tenth Circuit.
 July 15, 1970.
 Rehearings Denied August 25, 1970.
 
 William M. Cohen, Boulder, Colo. (John A. Purvis, Boulder, Colo., on the brief) for appellants.
 Michael T. Haley, Asst. Atty. Gen., Denver, Colo. (Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., and George E. DeRoos, Asst. Atty. Gen., Denver, Colo., on the brief) for appellees.
 Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 These are consolidated appeals from orders of the District Court denying separate petitions for Writs of Habeas Corpus. Appellants, prisoners in the Colorado State Penitentiary, generally alleged in their petitions that they were each denied due process and equal protection of the law at their respective parole revocation hearings conducted by the Parole Board of the State of Colorado.
 
 
 2
 The facts disclose that at unrelated trials each appellant was convicted of a felony and sentenced to a term of imprisonment. After serving part of the imposed sentence each was released on parole, but subsequently each was arrested for violations of the conditions of their paroles. Their paroles were suspended and they were reincarcerated pending parole revocation hearings before the parole board.
 
 
 3
 The procedure for revoking parole in Colorado is set out in C.R.S.1963, 39-17-4 (Supp.1969) and implemented by Rules and Regulations of the Colorado State Board of Parole. Whenever an officer of the Division of Parole has reason to believe that a parolee has violated the conditions of his parole, the parolee may be arrested with or without a warrant. The parolee is held in county jail for a period not exceeding 12 days while an investigation is conducted. If it is determined that no violation has occurred, the parolee is immediately released; but if the investigation discloses a parole violation, the investigating officer must file his written report and recommendations with the Director of the Division of Parole for action by the parole board regarding suspension, revocation, or continuance of parole.
 
 
 4
 Within three days after the report and recommendations are filed, the Director must suspend the parole of the parolee and return him to the institution from which he was paroled, there to await the action of the board. If parole is revoked, the time spent in jail awaiting the action of the board is credited to the sentence of the parolee.
 
 
 5
 At the board's regular monthly meeting at the Colorado State Penitentiary, any parolee who has been returned to the institution is brought before the board or at least two members thereof for an interview to consider the suspension of his parole. The parole violator is informed of the reason for the parole suspension and of any grounds which have been asserted for parole revocation; in addition he is given the opportunity to speak on his own behalf.
 
 
 6
 The interviewing board members determine whether the parolee's parole should be continued, or whether the parole suspension should be continued, or whether parole should be revoked. Before that decision is made, at least one of the interviewing board members reads any written statements submitted by persons on behalf of the parolee, and such statements are considered together with the other information in the parolee's file in making the determination to revoke, suspend or continue parole.
 
 
 7
 The decision of the interviewing members is submitted to the entire board or a majority thereof for final determination, and subsequently the parolee is notified whether his parole has been revoked, continued or suspended.
 
 
 8
 On the record, appellants have not alleged or shown that in derogation of the board's regulations[1] they were not informed at the parole revocation hearings of the charged parole violations or were not given the opportunity to speak on their own behalf. However, pursuant to the parole board's regulation III(C)[2] no person was allowed to appear before the board on behalf of any appellant and each appellant's request for appointment of counsel was denied. Written statements on behalf of any appellant would have been accepted by the parole board under regulation III(C) but the record does not disclose that any statements were tendered. Ultimately each appellant's parole was revoked and pursuant to C.R.S.1963, 39-18-5 each remained in prison to serve out the full sentence originally imposed.
 
 
 9
 At the outset, appellees point out that certain issues are raised by appellants on this appeal that were not presented to and decided by the trial courts in these cases. Consistent with our many decisions we will not consider any issues presented by appellants for the first time in these appeals.
 
 
 10
 From our examination of the record, we believe appellees' brief accurately sets out the issues properly before us in these cases as follows:
 
 
 11
 1. Were petitioners' rights to due process under the Fourteenth Amendment violated because of (a) denial of a right to a court trial type of hearing; (b) denial of a notice of a hearing and an opportunity to be heard; (c) denial of right of confrontation of witnesses, cross-examination of witnesses and compulsory process; (d) denial of right to have appointed counsel at revocation hearing because of indigency; and (e) denial of the right to a local hearing for revocation of parole.
 
 
 12
 2. Was there a denial of equal protection under the Fourteenth Amendment when the Colorado Parole Board, by practice, considers along with other information, statements, which may include a statement from a retained attorney and does not provide an indigent parolee with appointed counsel to submit a written statement on his behalf.
 
 
 13
 It seems undisputed that for us to agree with the arguments presented by appellants we would have to overturn our recent case of Alverez et al. v. Turner, 422 F.2d 214 (10th Cir. 1970) because most of the issues posed here were decided in that case adverse to Utah state prisoners whose paroles had been revoked. In that case, we were asked to decide, "[f]irst, whether parole revocation hearings command the rights to witnesses, evidence, confrontation, cross-examination and compulsory process; and secondly, irrespective of our disposition on the former issue, whether the rehearings measured up to the procedural needs of the occasion." Upon careful analysis in Alverez we declined to require witnesses, evidence, confrontation, cross-examination and compulsory process as here urged by appellants. Moreover, in the earlier case of Williams v. Patterson, 389 F.2d 374 (10th Cir. 1968), we held that the denial of the assistance of counsel at a parole revocation hearing was no ground for federal habeas corpus relief.
 
 
 14
 Appellants have urged us to reconsider Alverez v. Turner, supra, and Williams v. Patterson, supra, particularly in the light of the Supreme Court's recent decisions in Goldberg v. Kelly, 397 U.S. 282, 90 S.Ct. 1028, 25 L.Ed.2d 310 (1970) and In the Matter of Samuel Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In considering these decisions by the Supreme Court, it is apparent that they are grounded upon factual settings widely differing from a parole revocation proceeding. As the Supreme Court itself has observed in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960), "`Due process' is an elusive concept. Its exact boundaries are undefinable, and its context varies according to specific factual contexts." Thus neither Goldberg nor Winship is dispositive regarding due process in the specific factual context of a parole revocation proceeding. Moreover, we have re-examined the other cases cited by appellants (and previously considered by this court in Alverez v. Turner, supra) in the light of Goldberg and Winship, but we remain convinced that our decisions have correctly determined that the specific constitutional safeguards of counsel, witnesses, evidence, confrontation, cross-examination and compulsory process are not required at state parole revocation hearings.
 
 
 15
 With regard to the other safeguards appellants contend for, we went on to say in Alverez v. Turner, supra, 422 F.2d at 220, "In holding that appellees were not entitled to the specifies of due process available to an accused in the first instance, we in no way negate the right of appellees to enjoy due process as that mandate reflects the right of all persons to inherent fairness in all compulsive processes. The right of a prisoner to be heard at a revocation hearing is inviolative; so, too, is the right to know and be specifically informed of the charges and the nature of the evidence against him; and, finally, the right to be free from pure caprice on the part of the discretionary authority before whom the proceedings occur." Thus we are in agreement with appellants that they were entitled to know the charges and nature of the evidence against them regarding their specific parole violations, as well as being entitled to a hearing and a decision free of caprice. Moreover, we agree that the right to gather and file written statements before the board is an empty right unless parole violators are given notice of the charges prior to their hearing before the parole board.
 
 
 16
 However in reviewing to determine whether appellants have been accorded the inherent fairness spoken of in Alverez, we are met with a scanty record devoid of a copy of the proceedings before the parole board.[3] Hence the record on appeal does not accurately reflect what transpired at appellants' respective hearings, except to indicate that they were afforded hearings. Regarding their respective right to know the charges and the nature of the evidence against them and their right to be free from arbitrariness, we emphasize that appellants' multitudinous allegations do not at any place deny that they violated the conditions of their respective paroles. Appellants easily could have made a record in this regard and in the absence of that we cannot conclude that any appellant was prejudiced in the proceedings before the parole board if indeed we could say that the rights designated in Alverez were not accorded appellants.[4] In view of the nature of the decision to be made in parole revocation proceedings,[5] the presumption of correctness accorded to the proceedings of parole boards,[6] and our limited review of such decisions for abuse of discretion,[7] we are unable to conclude that the parole revocation proceedings accorded each appellant lacked inherent fairness.
 
 
 17
 This brings us to appellants' equal protection contention that various procedural safeguards are granted probationers at probation revocation proceedings but denied parolees at parole revocation proceedings. As we indicated in Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969), probation revocation proceedings involving deferred sentencing are quite distinct from parole revocation proceedings.[8] With regard to the comparability of probation revocation proceedings not involving deferred sentencing, we need not state a view since it has not been demonstrated to us that in law or in practice probationers in those proceedings are accorded any procedural safeguards not accorded parolees in parole revocation proceedings. The Colorado Statutes on Probation, C.R.S. 1963, 39-16-1 et seq., do not provide probationers more in substance than what is accorded parolees. Appellants' cited Colorado cases[9] allegedly showing unequal treatment in practice are cases involving deferred sentencing in conjunction with probation revocation proceedings which we have stated to be not comparable with parole revocation proceedings. We should also point out that this equal protection argument was not presented to the District Court and appellants have argued it for the first time here on appeal. Once again we must reiterate our seemingly constant admonition that arguments not raised in the trial court cannot be pressed on appeal.
 
 
 18
 Lastly appellants contend that they were denied equal protection because the state refused to appoint counsel to assist them in the preparation and presentation of documentary evidence and written material on their behalf. This contention is premised on the fact that the parole board allows written statements to be filed with the board on behalf of parolees appearing in parole revocation proceedings. Potentially, a parolee with sufficient funds could hire a lawyer to assist in filing such statements and this alleged advantage to non-indigent parolees is the crux of appellants' argument. However, we cannot agree with appellants that indigents are being deprived of legal representation while nonindigents are obtaining such representation.
 
 
 19
 We do not think that filing the permissible statements amounts to legal representation for as we thought we made clear in Alverez the nature of parole revocation proceedings is far removed from a trial-type setting. Such proceedings are not an esoteric area where only persons with legal training are effective.[10] Given the nature of the proceedings there is no reason to believe that it adds anything to a parolee's case for a lawyer to be the party filing statements with the board on the parolee's behalf. When measured by the equal protection standard of rooting out invidious discrimination rather than establishing absolute equality,[11] appellants' last contention is without merit.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Rule V(B) of the Rules and Regulations of the Colorado Board of Parole in pertinent part provides, "He shall be informed of the reason for the suspension and of any grounds which have been asserted for revocation of his parole and shall be given an opportunity to be heard in regard thereto."
 
 
 [2]
 "No person whose parole is being considered shall be represented before the Board or a member or members thereof by another nor shall anyone be allowed to appear before the Board or its members in his behalf either in his presence or without his presence, but the Board shall consider any written statements made in his behalf by others."
 
 
 [3]
 C.R.S.1963, 39-17-3 (Supp.1969), Regulations II(A) and V(A) of the Colorado State Board of Parole, and testimony before the District Court indicate that various reports concerning parolees, including records at parole proceeding, are maintained in the board's file on the parolee. We decline to require more from the board in the way of findings of fact and conclusions after a revocation proceeding since "[t]he decision to revoke cannot emanate but in part from factors capable of legal proof. And if, as we have held, the decision to revoke is discretionary, the degree to which personal factors * * * dictate a positive disposition is not susceptible to legal analysis. Stricturing the channels of information, which are required by statute, would impede the Board from making what in the end is always an assessment of the whole person." Alverez et al. v. Turner, 422 F.2d 214, 218 (10th Cir. 1970)
 We are aware that the parole board's records may be considered to be confidential and not accessible to the public under C.R.S.1963, 39-17-3 (Supp.1969). However, we doubt that this insulates the records from subpoena and inspection by the court when a prisoner makes out a prima facie case of abuse of discretion or caprice on the part of the board in parole revocation proceedings.
 
 
 [4]
 Accord Earnest v. Moseley, 426 F.2d 466 (10th Cir. 1970); Cotner v. United States, 409 F.2d 853 (10th Cir. 1969).
 
 
 [5]
 See generally President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime on a Free Society, pp. 179-80 (1967).
 
 
 [6]
 Earnest v. Moseley, 426 F.2d 466 (10th Cir. 1970); Christianson v. Zerbst, 89 F.2d 40 (10th Cir. 1937)
 
 
 [7]
 Williams v. Patterson, 389 F.2d 374 (10th Cir. 1968); Freedman v. Looney, 210 F.2d 56 (10th Cir. 1954)
 
 
 [8]
 Cf. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).
 
 
 [9]
 Holdren v. People, 452 P.2d 28 (Colo. 1969); Jesseph v. People, 164 Colo. 312, 435 P.2d 224 (Colo.1967)
 
 
 [10]
 Cf. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
 
 
 [11]
 Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969)