Joe David **MURRAY**, Petitioner-Appellant,

v.

**Ray H. PAGE**, Warden, Respondent-Appellee.

No. 6–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 1970.

Rehearing Denied Oct. 2, 1970.

Livingston Hall, Cambridge, Mass. (L. E. Stringer and Clyde A. Muchmore, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., were with him on the brief), for appellant.

H. L. McConnell, Asst. Atty. Gen. of Oklahoma (G. T. Blankenship, Atty. Gen. of Oklahoma, was with him on the brief), for appellee.

Before LEWIS, Chief Judge, and PICKETT and HICKEY, Circuit Judges.

LEWIS, Chief Judge.

Petitioner, a state prisoner seeking relief by writ of habeas corpus filed under 28 U.S.C. § 2254, appeals from a judgment of the United States District Court for the Western District of Oklahoma summarily denying his application for failure to state a federal constitutional question. The case involves Oklahoma state parole procedures as applied to petitioner.

In 1948, Murray was convicted of a state kidnapping charge and sentenced to 25 years' imprisonment. He was paroled in 1957. In 1965, his parole was summarily revoked, without notice or hearing, by executive order. The relevant Oklahoma statute expressly provides for such summary revocation:

> If a paroled convict shall at any time be guilty of a violation of any of the conditions of his parole, he may, upon the order of the Governor, be re-arrested and recommitted, without further proceedings, to confinement for the remainder of, and under the terms of, his original sentence. Okla.Stat. Ann. tit. 57, § 346 (1969).

Subsequently, Murray sought relief in state court and his challenge to the revocation proceedings was denied. Murray v. State, 444 P.2d 236 (Okl.Crim.), cert. denied, 393 U.S. 1059, 89 S.Ct. 702, 21 L.Ed.2d 701. The Oklahoma court held that revocation by the governor without notice or hearing violated no constitutional right claimed by Murray. That same court, however, a year later recognized the existence of federal constitutional over-tones in summary parole revocation proceedings and concluded that "the principles of fundamental jus-

tice and fairness" require that before revocation of parole a parolee should be advised "of the ground upon which revocation is sought and afforded a reasonable opportunity for a hearing on whether the conditions of the parole were in fact violated." Chase v. Page, 456 P.2d 590. The new Oklahoma procedure was given prospective application only and not mandated at all in so-called "clear" cases. Thus, the issues presented to us are two: Whether a state may, consistent with the due process clause of the fourteenth amendment, summarily revoke the parole status of a state convict without a hearing in any case and, if the state cannot so do, does the administration of justice require a retroactive application of such rule.

Relying principally upon Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L. Ed. 1566, and its progeny, the appellee has argued that since parole is a privilege or grace given to a prisoner, its rescission is not protected by the fourteenth amendment. In *Escoe*, the Supreme Court did indeed refuse to accept a constitutional basis for arguably comparable rights and stated that

> Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. 295 U.S. at 492–493, 55 S.Ct. at 819.

Although enunciation of this principle was in response to argument rather than dispositive of the case,[1] it has been determinatively applied by lower courts in subsequent cases. See, e. g., Rose v. Haskins, 6 Cir., 388 F.2d 91.

However, subsequent determinations of minimal due process standards by the Supreme Court have not embraced the theory proposed in *Escoe*. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L. Ed.2d 336, held that a probationer is entitled under the due process clause of the fourteenth amendment to be repre-

---

1. *Escoe* involved the construction of a federal statute requiring that a probationer accused of transgressing the terms of his probation must be brought into court before resentencing.

sented by counsel in a probation revocation hearing. The petitioner's probationary status—a matter of legislative grace —did not preclude inquiry into the substantiality of the rights possibly prejudiced by absence of counsel at this stage of the criminal proceedings. In like manner, due process protections have been extended to the welfare recipient. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, held that termination of welfare benefits must be preceded by notice of a fair hearing at which the recipient could appear, with counsel, and present and counter evidence. The recipient has no right to welfare payment, but due process was held to circumscribe summary termination of these benefits.

 As these cases make clear, constitutional inquiry does not end by the easy assertion that the particular liberty involved is a privilege, enjoyed only through the grace of the sovereign. Of equal relevance is an assessment of the precise nature of the governmental action, which then must be balanced against the private interest affected by that action.

The interest of the individual parolee is obviously very great. He has been found guilty of a crime, deemed worthy of rehabilitation and consequently given the privilege of parole. Parole revocation therefore terminates a valued, if conditional, liberty; personal freedom— whether classified as a grace, privilege or as constructive custody—has been unalterably rescinded. "[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter, J., concurring).

 The governmental function involved in parole revocation does not require the interjection of the full panoply of procedural protections contemplated by the Constitution as applied in judicial proceedings. We have so held in Alverez v. Turner, 10 Cir., 422 F.2d 214:

> [A] trial's adjudicatory process [cannot] be meaningfully equated with the type of fact-finding involved in parole revocations; * * * the due process clause of the fourteenth amendment does not generate rights to confrontation, nor to cross-examination or compulsory process * * * [nor to] the dual rights to witnesses under oath and evidence in conditional release hearings. 422 F.2d at 219 (citations omitted).

However, the right to appear and be represented by counsel has been extended, on grounds of equal protection, to both state and federal parolees. *See* Earnest v. Willingham, 10 Cir., 406 F.2d 681, and Duennebeil v. Turner, 10 Cir., 425 F.2d 1207 (1970). And as we recognized in *Alverez*, giving effect to the parolee's minimal rights of notice and opportunity to be heard does not serve to obstruct the administrative mission of the parole board:

> In holding that appellees were not entitled to the specifics of due process available to an accused in the first instance, we in no way negate the right of appellees to enjoy due process as that mandate reflects the right of all persons to inherent fairness in all compulsive processes. The right of a prisoner to be heard at a revocation hearing is inviolative; so, too, is the right to know and be specifically informed of the charges and the nature of the evidence against him; and, finally the right to be free from pure caprice on the part of the discretionary authority before whom the proceedings occur. 422 F.2d at 220. See also Murphy v. Turner, 10 Cir., 426 F.2d 422 (1970).

 Therefore, while a prisoner does not have a constitutional right to parole, once paroled he cannot be deprived of his freedom by means inconsistent with due process. The minimal right of the parolee to be informed of the charges and the nature of the evidence against

him and to appear and to be heard at the revocation hearing is inviolate. Statutory deprivation of this right is manifestly inconsistent with due process and is unconstitutional; nor can such right be lost by the subjective determination of the executive that the case for revocation is "clear."

■ As we have indicated, Oklahoma now accords a hearing in parole revocation proceedings (except in "clear" cases, a qualification which we have rejected) but has done so only since the decision in Chase v. Page, *supra,* and thus petitioner is dependent upon the established necessity of applying present standards retroactively if he is to obtain relief. The principle is now well established that the Constitution neither prohibits nor requires retroactive effect. The determination in each case is dependent upon the nature of the rights vested by the new ruling as weighed against "public policy in light of the nature both of the [unconstitutional] statute and * * * its previous application." Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329, quoted in Linkletter v. Walker, 381 U.S. 618, 627, 85 S.Ct. 1731, 14 L.Ed.2d 601. In the latter case, the Supreme Court declined to give retroactive effect to its ruling in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.[2] The *Mapp* decision "had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within its rights. This, it was found, was the only effective deterrent to lawless police action." Linkletter, *supra* 381 U.S. at 636, 85 S.Ct. at 1741. Therefore, retroactive application would not effectuate the purpose of the ruling.

Conversely, the Supreme Court has held retroactive application necessary where the newly enunciated right affected "the very integrity of the fact-finding process" and averted "the clear danger of

convicting the innocent." Linkletter v. Walker, *supra* at 639, 85 S.Ct. at 1743; Tehan v. United States ex rel. Shott, 382 U.S. 406 at 416, 86 S.Ct. 459 at 465, 15 L.Ed.2d 453. Thus Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799, granting the right to counsel to indigents, and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, involving the right of an accused to effective exclusion of an involuntary confession, were applied retroactively. And in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, it was reiterated that retroactivity was to be determined on the basis of the functional criteria established in *Tehan* and *Linkletter*. The relative status of the constitutional right involved must play no part in this assessment:

> We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved.

> * * *

> Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice * * *. [W]e must determine retroactivity "in each case" by looking at the peculiar traits of the specific "rule in question." 384 U.S. at 728, 86 S.Ct. at 1778 (citations omitted).

■ In its final analysis revocation proceedings constitute a revaluation of the "whole man" in regard to his place in society. This revaluation may involve consideration of new facts but only as incidental to the more general function of the proceeding. The right to appear and be heard at a parole revocation is minimal, not to be compared to the elaborate protections afforded the criminally accused. And at this late date we do not believe the administration of justice would be best served by now imposing perhaps an insurmountable burden of

---

2. In *Mapp* the court held that exclusion of evidence seized in violation of the search and seizure provisions of the fourth

amendment was required of the states by the due process clause of the fourteenth amendment.

conducting revocation hearings years after the decision to revoke has been made. The basic fact finding, that of criminal guilt, remains established, and no authority could be reasonably expected to anticipate an obligation to preserve the evidence, unrecorded and not documented, of the bases of revocations not considered under modern constitutional interpretation. We hold that the application of Oklahoma procedures as prospective only affords petitioner no right to federal relief.

Affirmed.