ROBERT BAXTER *vs.* COMMONWEALTH.

Suffolk.    February 3, 1971. — April 5, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Parole. Constitutional Law,* Due process of law. *Habeas Corpus. Error, Writ of.*

Discussion of parole and revocation of parole in the light of applicable constitutional principles and statutes; *Martin* v. *State Board of Parole,* 350 Mass. 210, followed. [179–180]

A parolee from a penal institution was not denied due process of law with respect to the revocation in 1970 of his parole by the State Board of Parole where it appeared that about two years after the parole was granted the parolee was convicted in a municipal court on two charges, only one of which he appealed, that while he was awaiting trial in the Superior Court on the appealed charge and on two indictments on other charges the board voted to revoke his parole without notice to him or hearing and in his absence, that, in accordance with the rules of the board, the parolee was not represented by counsel at any of its meetings or when members of the board conferred with him after the revocation was voted, and

that the board did not notify the parolee of the specific reasons why his parole was revoked or of evidence relied on by it and gave him no "opportunity to present witnesses . . . or to confront and cross-examine anyone who may have supplied information" to the board [176–178, 183]; any suggestion of capricious or arbitrary treatment of the parolee was negated by the fact that his parole officer conferred with him twice before recommending revocation of parole and by the conference with the board members. [183]

A petition for a writ of error by a parolee which challenged the validity of a revocation of his parole by the State Board of Parole but not any action taken in judicial proceedings was treated by this court as in essence a petition for a writ of habeas corpus. [183]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on April 24, 1970.

The case was reserved and reported by *Cutter, J.,* without decision.

*John C. Cratsley* for the petitioner.

*Charles E. Chase,* Assistant Attorney General, for the Commonwealth.

CUTTER, J. Baxter, on January 11, 1967, was sentenced to an indeterminate term at the Massachusetts Correctional Institution, Concord, on indictments charging (a) receiving a stolen motor vehicle, and (b) breaking and entering and larceny. On October 20, 1967, he was granted a parole. On January 1, 1970, Baxter was arrested and arraigned in the Municipal Court of Brookline for drunkenness in public and assault and battery. He was found guilty on both charges. He paid a fine of $5 on the drunkenness conviction, which he did not appeal. He appealed a sentence of six months in the house of correction on the assault and battery charge. He is awaiting jury trial in the Superior Court on that charge. He has also been indicted on other charges (assault and battery and unarmed robbery) and is awaiting a Superior Court trial on these charges also.

Baxter, early in January, 1970, discussed with his parole officer, Chester B. Gillis, the two charges on which he was convicted in the Municipal Court. Gillis also visited Baxter at his house to discuss these charges. Gillis recommended in one report that the parole board postpone action until after the disposition of the Brookline Municipal Court

charges, and in a later report (informing the board of the two indictments) again recommended deferment of action. When the Brookline court proceedings were finished on February 3, 1970, Gillis recommended that Baxter's parole be revoked. The board voted to do this on February 4, 1970. Baxter was not present when this vote was taken "and . . . received no notice of it." On February 13, 1970, Baxter was arrested and returned to confinement at Concord. On March 15, 1970, three members of the board interviewed Baxter at Concord, declined to grant him a new parole at that time, and recorded the meeting as a "revoke interview."

In accordance with parole board rules,[1] Baxter was not represented by counsel during any board meetings or during the "revoke interview." He was represented by retained counsel in the Brookline court proceedings. He has not received formal notification from the board of the specific reasons for revoking his parole or of any evidence against him relied upon by the board. The board has not given Baxter "opportunity to present witnesses in his own behalf or to confront and cross-examine anyone who may have supplied information to the [b]oard on the subject of . . . [his] parole."

Baxter filed in the county court this petition for a writ of error. A single justice permitted Baxter to be released on his personal recognizance during the pendency of the proceedings. The facts outlined above are set forth in a statement of agreed facts. At the request of the parties, another justice reserved and reported the case, without decision, for the determination of the full court.

Baxter denies any violation of his parole. He contends

---

[1] In the case stated, there is inadequate reference to the rules of the parole board and the parole certificate, each of which is referred to in the briefs. We cannot be required by the parties to take judicial notice of State administrative regulations or departmental practice. *Gentile, petitioner,* 339 Mass. 319, 320. *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.* 344 Mass. 281, 285. Such regulations and departmental practice should be proved, or be the subject of stipulation, like any other fact. The deficiency has now been cured by a stipulation approved by the single justice who has reported the case. Pertinent portions of the rules are set out in the appendix to this opinion.

that he was denied due process of law when his parole was revoked by the parole board without (1) a hearing prior to revocation before an impartial officer, (2) the assistance of counsel, (3) a complete statement of the charged parole violations, (4) the opportunity to confront and cross-examine adverse witnesses and present his own evidence through witnesses and oral testimony, and (5) reasons being given for any decision to revoke parole supported by sufficient evidence adduced at the hearing.

1. The general questions here raised were presented and decided (on February 7, 1966) adversely to Baxter's present contentions, in *Martin* v. *State Bd. of Parole*, 350 Mass. 210,[2] discussed later in this opinion. We are reluctant to reconsider these issues, so recently dealt with, in the absence of later controlling legislative or decisional changes requiring new study of the issues. Nevertheless, we discuss certain matters which Baxter's brief suggests may be affected by developments since our 1966 decision in the *Martin* case.

2. It is urged upon us that, unlike Martin (see 350 Mass. 210), Baxter had not disappeared at the time when his parole was revoked. He, however, had been convicted in the Municipal Court of Brookline of drunkenness, a clear violation of the terms of his parole,[3] and had not appealed. There was no necessity for the parole board to retry that unappealed conviction or to await (a) disposition in the Superior Court of the de novo trial of the other charge of which Baxter had been found guilty in the Brookline court and (b) trial of the pending indictments.

3. It is argued to us that the language of Mr. Justice Cardozo in *Escoe* v. *Zerbst*, 295 U. S. 490, 493–494 (which dealt with probation under judicial control, rather than ad-

---

[2] Shortly after the decision in the *Martin* case, we decided in *Williams* v. *Commonwealth*, 350 Mass. 732, that revocation of *probation*, imposed after suspension of the execution of a criminal sentence, was an occasion in judicial proceedings in which counsel must be appointed for an indigent defendant, where the revocation might result in imprisonment.

[3] Baxter's parole certificate, condition no. 3 of the standard parole conditions, bound him to "abstain from the use of intoxicating liquors and narcotics of all kinds" and not to "frequent places where they are dispensed." See fn. 1.

ministrative action revoking a parole under the control of the Executive branch), no longer is law. That case suggested that the necessity of a hearing upon a revocation of the suspension of a Federal sentence has no "basis in the Constitution apart from any statute." It was stated in the opinion that "suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose." This principle, Baxter argues, has been eroded by decisions like *Goldberg* v. *Kelly*, 397 U. S. 254, 262-263 (holding that welfare benefits are a matter of statutory entitlement for persons qualified to receive them and that a pretermination hearing is necessary to provide due process). The *Goldberg* case dealt with an interest which the court treated as one to which the welfare recipient was entitled absolutely if he continued to satisfy the statutory standards. See *Sherbert* v. *Verner*, 374 U. S. 398, 404-406; *Shapiro* v. *Thompson*, 394 U. S. 618, 627.

Parole in Massachusetts is a statutory administrative method of mitigation or adjustment (for purposes of rehabilitation) of a sentence which has been imposed by a court and is being executed under the direction of the Executive branch. In administering parole, the parole board performs a wholly executive function. In this Commonwealth, parole is designed to be a highly discretionary method (see *Woods* v. *State Bd. of Parole*, 351 Mass. 556, 559) of affording to a prisoner, in custody under sentence, an opportunity for rehabilitation outside of confinement. Parole is to be granted only after a prisoner is eligible (see G. L. c. 127, § 133, as amended through St. 1969, c. 184), and after the board's consideration of specified information mentioned in the statute. "The parole board shall reach its own conclusions as to the desirability of granting . . . [the] prisoner a parole permit." G. L. c. 127, § 136 (as amended through St. 1955, c. 770, § 73). See the power given by G. L. c. 27, § 5, to the board not only to grant a permit but "to revoke, revise, alter or amend the same, and the terms and conditions on which it was granted . . . until the expiration of the maximum

term of the sentence." See also c. 127, § 130 (as amended through St. 1955, c. 770, § 67). By G. L. c. 127, § 148, the "board ⋅ . . . granting to a prisoner a permit to be at liberty may revoke it at any time previous to its expiration." It "may be revoked with or without cause shown." See *Kozlowsky, petitioner,* 238 Mass. 532, 537. See also c. 127, § 149, as appearing in St. 1946, c. 424, § 1, concerning arrest of parolee. Such a permit to be at large, in the discretion of an executive administrative agency, is not a benefit to which the prisoner is entitled except as a discretionary matter. The decisions (see G. L. c. 127, § 130, as amended), to be made by the board (even if it be assumed that they may not be arbitrary or capricious) require the exercise of judgment and discretion. We conclude that the revocation of a parole permit is under our statutes a discretionary matter, not controlled by the *Goldberg* case, 397 U. S. 254, particularly where no statutory requirements (or written rules or regulations thereunder) entitle a parolee to a pre-revocation hearing or to counsel at such a hearing. See *Martin v. State Bd. of Parole,* 350 Mass. 210, 211, fn. 1.[4]

Baxter also places reliance upon *Mempa v. Rhay,* 389 U. S. 128, 131, 135–137, decided in 1967. In that case, Mempa had pleaded guilty. His sentencing was deferred in accordance with a practice in the State of Washington and he was placed on probation. It was held that he was entitled to counsel at the combined hearing on revocation of probation and sentencing. We have already (see fn. 2, *supra*) dealt with essentially this question in our 1966 decision in *Williams v. Commonwealth,* 350 Mass. 732, 733,

---

[4] In the *Martin* case, at p. 211, we said, "There are no written rules and regulations whereby parolees are entitled prior to revocation to a hearing to determine whether a permit to be at liberty shall be revoked. It is not the custom or practice of the board to grant such hearings. No hearing of any sort was provided or offered to the plaintiff. There are written rules whereby parolees are entitled to an interview with the board subsequent to revocation, usually within sixty days, at which the violation may be explained and reparole sought. In many instances a parolee whose permit to be at liberty has been revoked has been released on reparole as a result of the interview. In that event no credit is given for time served between revocation and return to prison." General Laws c. 127, § 147, referred to in fn. 1 on that page, has been repealed by St. 1965, c. 772.

involving a defendant who was not afforded counsel at a court hearing, constituting both a trial on new complaints and a revocation of probation on a suspended sentence on earlier complaints. There we reached the same result as did the later *Mempa* case, *supra*, although we placed our decision on noncompliance with General Rule 10, now S. J. C. Rule 3:10 (351 Mass. 791; see 347 Mass. 809). We think that the *Mempa* and *Williams* cases, relating to revocation of probation during judicial proceedings, do not control Baxter's situation. He is complaining, not about revocation of probation by a court, but about the discretionary revocation of discretionary executive action granting him a revocable permit to be at large during the balance of a sentence as to which judicial action has been completed.[5]

4. The weight of authority appears to adhere to the view (a) that there is no *constitutional* obligation to afford a hearing in advance of revocation of parole (at least where no statute requires one); (b) that counsel need not be permitted at a parole revocation hearing, at least if that is the consistent rule; and (c) that the Legislature of a State may provide that the procedure upon parole revocation, and the judgment exercised concerning it, shall be a matter of reasonable executive discretion. Arbitrary and capricious conduct might present a different question not now before us.

The matter was put well by Judge Goodrich in *Washington* v. *Hagan*, 287 F. 2d 332, 334 (3d Cir.), "[T]he practice for more than fifty years has been to allow a prisoner a hearing but not representation by counsel. We think the practice is right because this matter of whether a prisoner is a good risk for release on parole or has shown himself not to be a good risk, is a disciplinary matter which by its very nature should be left in the hands of those charged with the responsibility for deciding the question. Of course, if the

---

[5] See *District Atty. for the No. Dist.* v. *Superior Court*, 342 Mass. 119, 122–128. See also G. L. c. 278, § 29C (inserted by St. 1962, c. 310, § 2). As to Baxter's 1967 sentence, the record reveals no present proceedings under G. L. c. 278, § 29 (as appearing in St. 1966, c. 301), so that there is now no continuing judicial action (other than the present case) concerning that prosecution..

parolee does not get a fair hearing, that is another question . . . ."[6]

The situation also was reviewed comprehensively by the present Chief Justice of the United States in *Hyser v. Reed*, 318 F. 2d 225, 237–247 (Ct. App. D. C.), cert. den. 375 U. S. 957, discussing the somewhat more elaborate procedures contemplated by the applicable Federal parole statutes and regulations. See *Jones v. Rivers*, 338 F. 2d 862, 869–875, esp. at 872 (4th Cir.); *Richardson v. Markley*, 339 F. 2d 967, 970 (7th Cir.); *Rose v. Haskins*, 388 F. 2d 91, 93–95 (6th Cir.), cert. den. 392 U. S. 946; *Dunn v. California Dept. of Corrections*, 401 F. 2d 340, 342 (9th Cir.); *Mead v. California Adult Authy.* 415 F. 2d 767, 768 (9th Cir.); *Wilkerson v. Patterson*, 303 F. Supp. 665, 667–668 (D. Colo.); *Mottram v. State*, 232 Atl. 2d 809, 813–816 (Maine). See also *Menechino v. Oswald*, 430 F. 2d 403, 409–412 (2d Cir. — parole release hearing); *Lewis v. Rockefeller*, 431 F. 2d 368, 370 (2d Cir.); *Kleczka v. Massachusetts*, 259 F. Supp. 462, 467 (D. Mass.); *In re Martinez*, 1 Cal. 3d 641, 646–652; *Loyd v. Youth Conservation Commn.* 287 Minn. 12, 16–19. Cf. *Earnest v. Willingham*, 406 F. 2d 681, 683–685 (10th Cir. — if retained counsel are allowed to appear, counsel for indigents must be permitted); *Alverez v. Turner*, 422 F. 2d 214, 218 (10th Cir.); *Murray v. Page*, 429 F. 2d 1359, 1361–1362 (10th Cir.); *Warren v. Parole Bd.* 23 Mich. App. 754, 759–773; *Commonwealth v. Tinson*, 433 Pa. 328, 332–334. Cf. also *Sostre v. McGinnis*, 442 F. 2d 178 (2d Cir.); *Hester v. Craven*, 322 F. Supp. 1256 (C. D. Calif.); *Goolsby v. Gagnon*, 322 F. Supp. 460 (E. D. Wis.). Baxter at the arguments, invited our attention to the recent case of *People ex rel. Menechino v. Warden, Greenhaven State Prison*, 27 N. Y. 2d 376, 382–386, reaching

---

[6] Judge Goodrich went on to say, "The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced and, if he wishes, has gone through the process of appeal. Now the problem becomes one of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer representation and lawyer opposition in the matter of revocation of parole."

(by a four to three decision) a different conclusion from the majority of the cases just cited. We are more impressed by the minority views, especially the highly persuasive statement by Judge Breitel (pp. 393–397) of the numerous practical reasons for leaving to the Legislature changes and reforms (see Am. Law Inst., Model Penal Code, § 305.15 [Proposed Official Draft, 1962]) in the methods of parole revocation. This is a matter properly within legislative discretion. Until and unless there is some new declaration of the applicable constitutional principles by the Supreme Court of the United States, or some change in the Massachusetts statutes, we follow the *Martin* case, 350 Mass. 210.

5. We see nothing capricious or arbitrary about the treatment of Baxter. His parole officer conferred with him twice before recommending revocation. That took place only (a) when the two proceedings in the Municipal Court of Brookline were completed by convictions (one of which was not appealed), and (b) after the return of indictments not yet tried. Although the Municipal Court judge's finding in one case was not final because of the appeal, even that conviction was a circumstance which the board could reasonably take into consideration as constituting a determination of guilt (subject to reversal). Baxter was given a conference with the board. No facts are set forth in the case stated which suggest that the propriety of the revocation has not been fully considered by the board.

6. Baxter is not seeking to reverse any judgment or to object to any action in judicial proceedings. No question was raised in the pleadings about the propriety of his proceeding by writ of error. The result would have been the same if he had proceeded by petition for a writ of habeas corpus. We treat the proceeding as in essence a petition for that writ. The petition is to be dismissed.

*So ordered.*

### APPENDIX

(See Rules of the Parole Board and Statutes Relating to the Duties and Powers Thereof, 1968)

The Massachusetts parole board describes parole and revocation hearings as follows: "The Parole Board conducts parole hearings at the state correctional institutions . . . and the fourteen county institutions. Attendance is restricted to parole personnel, the Commissioner of Correction, or his representative . . . . On rare occasions, others may be invited by the [b]oard to attend, provided that their attendance does not . . . [deny] the prisoner . . . an opportunity to relax and to give free expression to his views . . . relating to his case. The hearings although private, are held in an informal manner. Any formal presentation by an attorney, relatives and others who are so excluded . . . may discuss the . . . case with the [b]oard at . . . [its] executive offices . . . before or any time after the hearing. The [b]oard desires any such presentation to be in writing, and attorneys must first file a statement of their interest in parole . . . with the Secretary of State as provided by . . . [G. L. c. 127, § 167]. The [b]oard wishes to emphasize that no inmate is in need of legal representation for parole since the decision . . . is made after study of all available facts . . . . After the . . . [b]oard has discussed at length with the inmate . . . and after careful deliberation . . . the prisoner is advised of the . . . decision at the end of the interview. . . . The [b]oard indicates their decisions in the following manner — . . . 7. — 'Revoke Interview' — An inmate, sentenced to a State correctional institution and who is returned to the institution for violation of the terms of his parole, shall be interviewed by the [b]oard as soon as feasible. If the [b]oard fails to take action for reparole, the interview is recorded as 'Revoke Interview.' This indicates that the prisoner will again be seen one year from the month of his return." There follows a list of "factors considered by the [b]oard when evaluating a case for parole." The board refers also to the importance of "[r]egular home visits and employment checks," at least once a month including "an actual interview of the parolee." A parole officer maintains records on each parolee under his direction. These records include a chronological history with current, up to date, factual information. By this history "the parole officer keeps the [b]oard informed of the . . . progress being made."