IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,182, 75,183 & 75,184






EX PARTE CARLOS CARMONA






ON APPLICATIONS FOR WRIT OF HABEAS CORPUS 


FROM DALLAS COUNTY





 Price, J., announced the judgment of the Court and delivered an opinion, in
which Johnson, Holcomb, and Cochran, JJ., joined. Womack, J., filed a
concurring opinion. Hervey, J., filed a dissenting opinion, in which Keller, P.J. 
and Keasler, J., joined. Meyers, J., did not participate.


O P I N I O N 



 The applicant seeks relief through habeas corpus from an adjudication of guilt that
resulted in the revocation of deferred adjudication and a ten-year sentence of
imprisonment in the Texas Department of Criminal Justice-Correctional Institutions
Division. The applicant was adjudicated guilty based entirely upon perjured testimony. 
We grant the applicant relief because his community supervision was revoked without
due process of law.

I. Factual and Procedural Background


 The applicant was placed on deferred adjudication for ten years and fined $2000
for his guilty plea to sexually assaulting Amanda Leal, retaliating against Leal, and
unlawful possession of a firearm by a felon. Days after the applicant was placed on
deferred adjudication community supervision for these three crimes, the State filed a
motion to adjudicate guilt in each case based upon Leal's claim of a subsequent assault. 

 At the adjudication hearing, the State presented three witnesses. Leal testified that
the applicant struck her in the face in a grocery store parking lot. Leal also stated that she
had had no medical work done on her face and that she did not check into a hotel with the
applicant on the same night as the alleged assault took place. Lawrence Battles testified
that he witnessed the assault on Leal by the applicant and that he had never met Leal prior
to the assault taking place. Finally, Linda Chacon, Leal's cousin, stated that she saw Leal
at the grocery store and witnessed her bloody appearance on the day of the assault. 

 As a result of the testimony of these three witnesses, the trial court adjudicated
guilt on the original offenses and sentenced the applicant to ten years' incarceration. The
applicant filed a motion for new trial alleging that the revocation was based solely on
perjured testimony. The trial court denied the motion because it did not include verified
affidavits. On direct appeal, the applicant's claim of ineffective assistance of counsel was
overruled. (1) 

 The applicant filed an application for writ of habeas corpus in each case, claiming
that the alleged assault used to support the adjudication of guilt never took place. During
the hearing on the applications, Leal admitted that she had perjured herself in retaliation
for the abuse she had suffered in the past and because the applicant did not call her when
he was released from jail. She testified that she had fabricated her report to the police and
that she had lied during the adjudication hearing. Leal also stated that she had checked
into a hotel with the applicant on the day of the claimed assault. Leal then testified that
she had convinced her cousin, Linda Chacon, to falsely testify that she saw Leal at the
grocery store where the alleged assault took place. 

 Further negating the evidence offered by the State to adjudicate the applicant's
guilt, Leal admitted that, through her work as an exotic dancer, she had known Battles,
the State's witness who claimed to have seen the assault, well before the alleged assault
took place. Battles supplied affidavits admitting that he had fabricated his testimony at
Leal's request, although he later invoked his constitutional right against self-incrimination
and refused to testify. Finally, medical records revealed that the bruises and bandages on
Leal's face were actually the result of rhinoplasty, not an assault perpetrated by the
applicant. 

 The trial court entered findings of fact in all three cases, listing the specific
inconsistencies between Leal's testimony at the adjudication hearing and the affidavits
and testimony given in the habeas proceedings. It specifically found that Leal had
committed perjury. (2) The trial court recommended granting relief if this Court concludes
that the applicant's claim is cognizable.

 We ordered the parties to brief the limited question of whether a claim that
adjudication of guilt was entered based entirely on perjured testimony is cognizable. We
hold that, under the limited circumstances of this case, the applicant's claim is cognizable
and that he is entitled to relief.

II. Law and Analysis


A. Cognizability 


 Habeas corpus is reserved for those instances in which there is a jurisdictional
defect in the trial court which renders the judgment void, or for denials of fundamental or
constitutional rights. (3) If the applicant's claim fits within one of these categories, then his
claim is cognizable in post-conviction habeas proceedings.

 The Due Process Clause of the Fourteenth Amendment imposes procedural and
substantive limits on the revocation of the conditional liberty created by probation. (4) 
Probationers have an obvious interest in retaining their conditional liberty. The State also
has an interest in ensuring that revocation proceedings are based on accurate findings of
fact and the informed exercise of discretion, which avoid the unnecessary interruption of
a successful effort at rehabilitation and provide for the safety of the community. (5) In
Morrissey v. Brewer, the United States Supreme Court held that due process applies to
parole revocations. (6) Commenting on the condition of one on parole, the Court noted:

 Though the State properly subjects him to many restrictions not applicable to other
citizens, his condition is very different from that of confinement in a prison. He
may have been on parole for a number of years and may be living a relatively
normal life at the time he is faced with revocation. The parolee has relied on at
least an implicit promise that parole will be revoked only if he fails to live up to
the parole conditions. In many cases, the parolee faces lengthy incarceration if his
parole is revoked. (7)


In Gagnon v. Scarpelli, the Supreme Court held that the procedures outlined in Morrissey
for parole revocation should also apply to probation proceedings. (8) 

 To meet the requirements of due process, the final revocation of probation must be
preceded by a hearing, where the probationer is entitled to written notice of the claimed
violations of his probation, disclosure of the evidence against him, an opportunity to be
heard in person and to present witnesses and documentary evidence, a neutral hearing
body, and a written statement by the fact finder as to the evidence relied on and the
reasons for revoking probation. (9) As we said in Ex parte Hale, "the Constitution of our
country has been interpreted to protect persons who are released [on commumity
supervision], from reincarceration without due process of law." (10)

 Accordingly, due process requires that reincarceration occur only after the
disclosure of evidence against the defendant. (11) Within this right to disclosure of evidence
afforded by due process, we can infer the requirement that revocation may not occur
when it is based solely on perjured testimony. Because habeas review is appropriate for
denials of fundamental or constitutional rights, (12) the applicant's claim that his community
supervision was revoked solely on perjured evidence, and therefore without due process
of law, is cognizable under the habeas jurisdiction of this court.

 The State argues, however, that the applicant's claim may not be cognizable
because Code of Criminal Procedure Article 42.12, section (5)(b) states that no appeal
may be taken from the trial court's determination to adjudicate guilt. This prohibition of
an appeal from a decision to adjudicate guilt does not, however, prohibit a collateral
attack on the determination to adjudicate guilt through habeas corpus because appellate
proceedings are different from collateral, post-conviction proceedings. 

 Code of Criminal Procedure Article 3.01 states that, "All words, phrases and terms
used in this Code are to be taken and understood in their usual acceptation in common
language, except where specifically defined." The Code does not specifically define
either appeal or habeas corpus. In Black's Law Dictionary, appeal is defined as "[a]
proceeding undertaken to have a decision reconsidered by bringing it to a higher
authority." (13) Habeas corpus, in the context of a challenge to a final felony conviction, is a
collateral attack on the judgment. (14) A collateral attack is "[a]n attack on a judgment
entered in a different proceeding." (15) Appeals and habeas corpus are two different types of
proceedings. If the legislature meant to foreclose habeas relief from adjudication
proceedings, it could have said so explicitly, but it did not. We conclude that the
prohibition on direct appeals in Article 42.12, section 5(b) is not a bar to habeas relief in
the applicant's case. (16)

 Having concluded that the applicant's claim is cognizable in habeas proceedings, 
we will address the merits of his claim.

B. Violation of Due Process

 Leal's and Battles's recantations are evidence that the applicant's community
supervision was revoked without due process of law. Further, the trial court has entered
findings of fact and conclusions of law and has specifically found that Leal committed
perjury. While this Court is not bound by the findings of the trial court in post-conviction
habeas corpus proceedings, such findings are considered if supported by the record. (17) 

 The witnesses against the applicant either have recanted their testimony or their
bias and lies have been exposed. Further, the evidence of physical abuse, consisting of
photos of Leal's bruised and bloodied face, has been proven to be the result of a medical
procedure rather than an attack by the applicant. The record supports the trial court's
findings, and we are convinced that the applicant's community supervision was revoked
without due process of law because it was revoked solely on the basis of perjured
testimony. Accordingly, the applicant is entitled to relief.

 The trial court's judgment revoking the applicant's community supervision is set
aside and the Director of the Texas Department of Criminal Justice-Correctional
Institutions Division is ordered to return applicant to the custody of Dallas County for
further proceedings by the trial court.

Publish.

Delivered: March 1, 2006


1. Carmona v. State, No. 05-02-00145-CR, 05-02-00146-CR, 05-02-00147, 2003 Tex.
App. LEXIS 9351 (Tex. App.--Dallas Nov. 4, 2003, no pet.) (not designated for publication). 
The applicant alleged that counsel was ineffective for filing an inadequate motion for new trial.
2. Leal was later prosecuted for aggravated perjury.
3. Ex parte Sanchez, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996).
4. Bearden v. Georgia, 461 U.S. 660, 666 & n.7 (1983).
5. Gagnon v. Scarpelli, 411 U.S. 778, 785 (1973).
6. 408 U.S. 471, 482 (1972).
7. Ibid. (citations omitted). See also United States ex rel. Bey v. Connecticut Board of
Parole, 443 F.2d 1079, 1086 (2d Cir. 1971) ("It is not sophistic to attach greater importance to a
person's justifiable reliance in maintaining his conditional freedom so long as he abides by the
conditions of his release, than to his mere anticipation or hope of freedom."); Murray v. Page,
429 F.2d 1359 (10th Cir. 1970) (parole revoked after eight years; 15 years remaining on original
term).
8. Gagnon, 411 U.S. at 782.
9. Id. at 786. 
10. 117 S.W.3d 866, 871 (Tex. Crim. App. 2003) (
citing Morrissey v. Brewer, 408 U.S. 471
(1972) (parole revocation) and Gagnon v. Scarpelli, 411 U.S. 778 (1973) (probation revocation)).
11. Gagnon, 411 U.S. at 786.
12. Ex parte Sanchez, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996).
13. Black's Law Dictionary 74 (Abridged 7th ed. 2000).
14. Id. at 208.
15. Ibid.
16. This is not the first time that jurists have offered opinions on this point. Judge
Overstreet explained in his concurring opinion in Olowosuko v. State, in which this Court
affirmed that Article 42.12, section 5(b) does not allow an appeal from a trial court's
determination to adjudicate guilt,"it would seem that a deferred adjudication probationer's only
avenue of recourse to complain of the adjudication is via Chapter Eleven of the Code of Criminal
Procedure." 826 S.W.2d 940, 942 (Tex. Crim. App. 1992). Further, a court of appeals has
commented on the availability of habeas to challenge an adjudication of guilt even though an
appeal is statutorily prohibited. In Kendall v. State, the Second Court of Appeals noted that a
remedy, if any, for error at an adjudication hearing is by way of a post-conviction writ of habeas
corpus. 929 S.W.2d 509, 510 (Tex. App.-Fort Worth 1996, pet. ref'd). 
17. Ex parte Morrow, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997).